1  Jack Silver, Esq. SBN 160575
Law Office of Jack Silver
2  Jerry Bernhaut, Esq. SBN 206264
Post Office Box 5469
3  Santa Rosa, CA 95402-5469
Tel. (707) 528-8175
4  Fax. (707) 528-8675
E-mail: lhm28843@sbcglobal.net

5
Attorneys for Plaintiff
6  NORTHERN CALIFORNIA RIVER WATCH

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10  NORTHERN CALIFORNIA WATCH,          CASE NO.:
a non-profit Corporation,
11                                       COMPLAINT FOR INJUNCTIVE RELIEF,
             Plaintiffs,                 CIVIL PENALTIES, RESTITUTION AND
12                                       REMEDIATION
                                         (Environmental - Clean Water Act
13        v.                             33 U.S.C. §1251 et seq.;
                                         RCRA 42 U.S.C. 6901 et seq.)
UNION PACIFIC RAILROAD
14  COMPANY, WEST COAST METALS
INC., and DOES 1-10, Inclusive,
15
             Defendants.
16  _____/      _____

17

18        NOW COMES Plaintiff, NORTHERN CALIFORNIA RIVER WATCH (hereafter,

19  "PLAINTIFF") by and through its attorneys, and for its Complaint against Defendants, UNION

20  PACIFIC RAILROAD COMPANY, WEST COAST METALS INC. and DOES 1-10 , Inclusive,

21  (hereafter, "DEFENDANTS"), states as follows:

22                          I. **NATURE OF THE CASE**

23  1.    This is a citizens' suit for relief brought by PLAINTIFF against DEFENDANTS under the Federal

24  Water Pollution Control Act, also known as the Clean Water Act (hereafter, "CWA"), 33 U.S.C. §1251

25  et seq., specifically Section 505, 33 U.S.C. §1365,  33 U.S.C. § 1311,  33 U.S.C. § 1342,  to stop

26  DEFENDANTS from repeated and ongoing violations of the CWA.  These violations are detailed in the

27  Notice of Violations and Intent to File Suit dated August 6, 2007 (hereafter, "CWA NOTICE") made

28  part of these pleadings and attached hereto as EXHIBIT A.

2.    This is a also a citizens' suit brought against DEFENDANTS under the citizen suit enforcement provisions of the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq., (hereafter,"RCRA"), specifically Sections 7002(a)(1)(A), 42 U.S.C. §6972(a)(1)(A) and 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), to stop DEFENDANTS from repeated and ongoing violations of the RCRA. These violations are detailed in the Notice of Violations and Intent to File Suit dated August 6, 2007 (hereafter, "RCRA NOTICE") made part of these pleadings and attached hereto as EXHIBIT B.

3.    DEFENDANTS are routinely violating the CWA's prohibition against discharging a pollutant from a point source to waters of the United States without a National Pollutant Discharge Elimination System (hereafter, "NPDES") permit, pursuant to CWA §301(a), 33 U.S.C. §1311(a), in the course of their ownership and control of the former scrap metal facility and subsequent metal salvage recycling facility, located at 99 Frances Street in Santa Rosa, California as described in detail in the attached CWA Notice and hereafter referred to as "the Site". Groundwater monitoring at and adjacent to the Site has revealed the presence of halogenated organic compounds and volatile organic compounds, as detailed in the CWA NOTICE, in soil and groundwater, which have migrated through soil and groundwater to Santa Rosa Creek, a tributary to the Laguna de Santa Rosa and the Russian River.

4.    Defendants are routinely violating the CWA's prohibition against discharging a pollutant from a point source to waters of the United States without a NPDES permit by permitting the above named pollutants to persist in soil and groundwater at the Site and by failing to implement an adequate Corrective Action Plan to remediate pollution at the Site. DEFENDANTS are also routinely violating the Basin Plan, Environmental Protection Agency ("EPS") regulations codified in the Code of Federal Regulations, and toxics standards promulgated by the State Water Resources Control Board  in the course of their ownership of the Site.

5.    Under 33 U.S.C. § 1251(e), Congress declared its goals and policies with regard to public participation in the enforcement of the CWA. 33 U.S.C. §§1251(e) provides, in pertinent part:

> Public participation in the development, revision, and enforcement of any regulation, standard, effluent limitation, plan or program established by the Administrator or any State under this chapter shall be provided for, encouraged, and assisted by the Administrator and the States.

6.    DEFENDANTS illegally discharge to waters which are habitat for threatened or endangered species as that term is defined by the California EPA and the United States EPA.

7.    DEFENDANTS' use and storage of scrap metal, automobile parts and industrial metal waste at the Site, as described in detail in the RCRA NOTICE, regularly violates standards, regulations, conditions, requirements or prohibitions effective pursuant to the RCRA regarding storage of halogenated organic compounds and other pollutants. (42 U.S.C. § 6972(a)(1)(A)).

8.    DEFENDANTS are routinely violating the RCRA's prohibition against creating an imminent and substantial endangerment to human health and the environment by their operations at the Site, as identified in the RCRA NOTICE which have caused and continue to cause contamination of soil, groundwater and surface water. (42 U.S.C. § 6972(a)(1)(B)).   Pollutants at the Site leach into groundwater from the residues of DEFENDANTS' use and storage of scrap metal, automobile parts and industrial metal waste.

9.    PLAINTIFF seeks declaratory relief, injunctive relief to prohibit future violations, the imposition of civil penalties, and other relief for DEFENDANTS' violations of the CWA's prohibition of discharging a pollutant from a point source to waters of the United States without a NPDES Permit, the RCRA's standards and regulations applicable to the use and storage of halogenated organic compounds and other pollutants, and DEFENDANTS' violation of the RCRA's prohibition against creating an imminent and substantial endangerment to human health and the environment.

## II. PARTIES

10.    PLAINTIFF, NORTHERN CALIFORNIA RIVER WATCH, is a 501(c)(3) non-profit public benefit corporation duly organized under the laws of the State of California, with headquarters and main office located at 6741 Sebastopol Avenue, Suite 140, Sebastopol, California. PLAINTIFF is dedicated to protect, enhance and help restore the surface and subsurface waters of Northern California.

PLAINTIFF's members live in Northern California and in Sonoma County where the Site and facilities under DEFENDANTS' operation and/or control are located.   PLAINTIFF''s members live nearby to waters affected by DEFENDANTS' illegal discharges. PLAINTIFF's members have interests in the watersheds which are or may be adversely affected by DEFENDANTS' violations.   Said members use the effected waters and watershed areas for domestic water, recreation, sports, fishing, swimming,

1   hiking, photography, nature walks, religious, spiritual and shamanic practices, and the like. Furthermore,

2   the relief sought will redress the injury in fact to PLAINTIFF and its members, the likelihood of future

3   injury and interference with the interests of said members.

4   11.     DEFENDANT UNION PACIFIC RAILROAD COMPANY is a private corporation with

5   administrative offices located at 1400 Douglas Street, Omaha, Nebraska. PLAINTIFF is informed and

6   believes and on such information and belief alleges that UNION PACIFIC RAILROAD COMPANY

7   is and was at all times relevant to this Complaint, the owner of the real property on which the Site is

8   situated.

9   12.     DEFENDANT WEST COAST METALS, INC. is a private corporation with administrative

10  offices are located in the City of Windsor, County of Sonoma, State of California.. PLAINTIFF is

11  informed and believes and on such information and belief alleges that WEST COAST METALS, INC.

12  is and was at all times relevant to this Complaint, the lessee of the real property on which the Site is

13  situated.

14  13.     DEFENDANTS DOES 1 - 10, Inclusive, respectively, are persons, partnerships, corporations

15  and entities, who are, or were, responsible for, or in some way contributed to, the violations which are

16  the subject of this Complaint or are, or were, responsible for the maintenance, supervision, management,

17  operations, or insurance coverage of DEFENDANTS' facilities and operations on the Site. The names,

18  identities, capacities, and functions of DEFENDANTS DOES 1 - 10, Inclusive are presently unknown

19  to PLAINTIFF. PLAINTIFF shall seek leave of court to amend this Complaint to insert the true names

20  of said DOES Defendants when the same have been ascertained.

21              **III.   JURISDICTIONAL ALLEGATIONS**

22  14.     Subject matter jurisdiction is conferred upon this Court by Section 505(a)(1) of the CWA, 33

23  U.S.C. § 1365(a)(1), which states in part that, "any citizen may commence a civil action on his own

24  behalf against any person . . . .who is alleged to be in violation of (A) an effluent standard or limitation

25  . . . . or (B) an order issued by the Administrator or a State with respect to such a standard or limitation."

26  For purposes of Section 505, "the term 'citizen' means a person or persons having an interest which is

27  or may be adversely affected."

28

COMPLAINT FOR INJUNCTIVE RELIEF                                              Page 4

15.     Subject matter jurisdiction is further conferred upon this Court by RCRA Section 7002(a)(1), 42 U.S.C. § 6972(a)(1), which states in part that, "...any person may commence a civil action on his own behalf (A) against any person ... who is alleged to be in violation of any permit, standard, regulation, condition requirement , prohibition or order which has become effective pursuant to this chapter, or (B) against any person ...who has contributed or who is contributing to the past or present handling, storage, treatment, transportation or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment."

16.     Members and supporters of PLAINTIFF reside in the vicinity of, derive livelihoods from, own property near, and/or recreate on, in or near and/or otherwise use, enjoy and benefit from the watersheds and associated natural resources into which DEFENDANTS discharges pollutants, or by which DEFENDANTS' operations adversely affect those members' interests, in violation of CWA § 301(a), 33 U.S.C. § 1311(a) , RCRA § 7002(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A) and RCRA §7002 (a)(1)(B), 42 U.S.C. § 6972(a)(1)(B). The health, economic, recreational, aesthetic and environmental interests of PLAINTIFF and its members may be, have been, are being, and will continue to be adversely affected by DEFENDANTS' unlawful violations. PLAINTIFF contends there exists an injury in fact to its members, causation of that injury by the DEFENDANTS' complained of conduct, and a likelihood that the requested relief will redress that injury.

17.     Pursuant to Section 505(b)(1)(A) of the CWA, 33 U.S.C. §1365(b)(1)(A), PLAINTIFF gave notice of the CWA violations alleged in this Complaint more than sixty (60) days prior to commencement of this lawsuit, to: (a) DEFENDANTS, (b) the United States EPA, Federal and Regional, and (c) the State of California Water Resources Control Board.

18.     Pursuant to 505(c)(3) of the CWA, 33 U.S.C. § 1365(c)(3), a copy of this Complaint has been served on the United States Attorney General and the Administrator of the Federal EPA.

19.     Pursuant to 7002 (2)(A) of the RCRA, 42 U.S.C. §6972(2)(A), PLAINTIFF gave notice of the RCRA violations alleged in this Complaint more than ninety (90) days prior to the commencement of this lawsuit to: (a) DEFENDANTS, (b) the United States EPA, Federal and Regional,(c) the State of California Water Resources Control Board, and (d) the State of California Integrated Waste Management Board.

20.    Pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), venue lies in this District as the Site under DEFENDANTS' ownership and/or control, and where illegal discharges occurred, which are the source of the violations complained of in this action, are located within this District.

21.    The basis for assignment of this case to the Northern District of California, pursuant to RCRA §7002(a)&(b), 42 U.S.C. §§ 6972(a)&(b), is that the Site where the alleged violations have taken place is located in this District.

## IV.  GENERAL ALLEGATIONS

22.    PLAINTIFF realleges and incorporates by reference the allegations of Paragraphs 1 through 21 as though fully set forth herein including all allegations in EXHIBIT A and B incorporated herein by reference.

23.    DEFENDANTS own and/or operate the former scrap metal, automobile parts, and industrial waste recycling site, located at 99 Frances Street in Santa Rosa, California, identified in this Complaint as the Site.   The Site has been identified as a source of pollutants posing a threat to human health and the environment from at least 1988, when the Regional Water Quality Control Board issued its first Cleanup and Abatement Order No. 88-101 for the Site. Ongoing monitoring activities have confirmed the presence of halogenated organic compounds in groundwater beneath the Site and extending out to surrounding areas. The Site discharges pollutants into the waterways referenced below.

24.    All illegal discharges and activities complained of in this Complaint occur in the waterways identified in the CWA NOTICE and RCRA NOTICE , all of which are waters of the United States.

25.    The Regional Water Quality Control Board has determined that the watershed areas and affected waterways are beneficially used for drinking water, water contact recreation, non-contact water recreation, fresh water habitat, wildlife habitat, preservation of rare and endangered species, fish migration, fish spawning, industrial service supply, navigation, and sport fishing.

## V.  STATUTORY AND REGULATORY BACKGROUND

26.    Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants from a "point source" into navigable waters of the United States, unless such discharge is in compliance with applicable effluent limitations as set by the EPA and the applicable State regulatory agency. These limits are to be incorporated into a NPDES permit for that point source specifically. Additional sets of

1  regulations are set forth in the Basin Plan, California Toxics Plan, the Code of Federal Regulations and

2  other regulations promulgated by the EPA and the State Water Resources Control Board.    Section

3  301(a) of the CWA prohibits discharges of pollutants or activities not authorized by, or in violation of

4  an effluent standard or limitation or an order issued by the EPA or a State with respect to such standard

5  or limitation including a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

6  The Site owned and/or operated by DEFENDANTS is a  point source under the CWA.

7  27.    The affected waterways detailed in this Complaint and in the CWA NOTICE are navigable

8  waters of the United States within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7).

9  28.    The Administrator of the EPA has authorized the Regional Water Quality Control Board  to issue

10  NPDES permits, subject to specified conditions and requirements, pursuant to Section 402 of the CWA,

11  33 U.S.C. § 1342.

12  29.    DEFENDANTS are covered under General Waste Discharge Requirements Order No. R1-2006-

13  0048, issued by the Regional Water Quality Control Board, to discharge treated groundwater from a

14  groundwater extraction and treatment system located on the Site to an unnamed tributary at the northern

15  portion of the Site which flows to Steele Creek, tributary to Piner Creek and thence to Santa Rosa Creek.

16  DEFENDANTS  have no NPDES Permit for the ongoing discharge of untreated, polluted groundwater

17  migrating though soil and groundwater to Santa Rosa Creek, a water of the United States  All

18  unauthorized point source discharges to waters of the United States from the Site are illegal. The Site

19  is itself a point source. Discharges from this point source via tributary ground waters to waters of the

20  United States, without a NPDES Permit are illegal.

21  30.    RCRA Section 7002(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A) permits an action against any person

22  who violates a PERMIT, STANDARD or REGULATION pursuant to the RCRA. DEFENDANTS have

23  stored, handled and disposed of materials containing halogenated organic compounds and other volatile

24  organic compounds, defined as hazardous wastes under the RCRA, in a manner which has allowed these

25  pollutants to be discharged to soil and groundwater beneath and adjacent to the Site in violation of

26  regulations regarding the use and disposal of hazardous wastes. (RCRA Section 3004 (d),  42 U.S.C.

27  §6924(d)).

28

COMPLAINT FOR INJUNCTIVE RELIEF                                                    Page  7

1    31.    RCRA Section 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B) permits an action against any person

2    who has contributed or who is contributing to the past or present handling of any solid or hazardous

3    waste which may present an imminent and substantial endangerment to health or the environment.  The

4    halogenated organic compounds and volatile organic compounds identified in the RCRA NOTICE

5    discharged at the Site in concentrations significantly greater than allowable Maximum Concentration

6    Levels ("MCL") and/or Water Quality Objectives ("WQO") are hazardous wastes pursuant to RCRA

7    Section 6903(5), 42 U.S.C. § 6972(5). Pollutants from these substances have leached into soil and

8    ground water beneath and adjacent to the Site, creating an imminent and substantial endangerment to

9    health and the environment.

10                    **VI.  DEFENDANTS' VIOLATIONS**

11    32.    DEFENDANTS' point source discharges from the Site are not regulated by a NPDES Permit

12    and violate the CWA's prohibition against discharge of pollutants from a point source without a NPDES

13    Permit.   The violations are established in Regional Water Quality Control Board Files for the Site as

14    well as in studies conducted by DEFENDANTS in compliance with orders from regulatory agencies .

15    33.    The enumerated violations are detailed in the CWA NOTICE, incorporated herein by reference,

16    and below, designating the section of the CWA violated by the described activity.

17    34.    DEFENDANTS' discharges to soil and groundwater violate the RCRA's regulations regarding

18    the storage and disposal of hazardous wastes. The violations are established in Regional Water Quality

19    Control Board Files for the Site as well as in studies conducted by DEFENDANTS in compliance with

20    orders from regulatory agencies

21    35.    DEFENDANTS' discharges to soil and ground water violate the RCRA's prohibition against

22    creating an imminent and substantial endangerment to health and the environment.  The violations are

23    established in Regional Water Quality Control Board Files for the Site as well as in studies conducted

24    by DEFENDANTS in compliance with orders from regulatory agencies .

25    36.    The enumerated violations are detailed in the RCRA NOTICE, incorporated herein by reference,

26    and below, designating the section of the RCRA violated by the described activity.

27

28

COMPLAINT FOR INJUNCTIVE RELIEF                                                    Page 8

## VII.  CLAIMS FOR RELIEF

### A.  FIRST CLAIM FOR RELIEF

**Violation of CWA  - 33 U.S.C. § 1251 et seq., 33 U.S.C. § 1342 (a) and (b),  33 U.S.C. § 1311**

**Discharge of Pollutants from a Point Source Must be Regulated by NPDES Permit**

37.    PLAINTIFF realleges and incorporates by reference the allegations of Paragraphs 1 through 36 as though fully set forth herein including all allegations in EXHIBIT A incorporated herein by reference.

38.    DEFENDANTS have and continue to violate the CWA as evidenced by the discharges of pollutants from a point source without a NPDES Permit in violation of CWA § 301, 33 U.S.C. § 1311.

39.    The violations DEFENDANTS are ongoing and will continue after the filing of this Complaint. PLAINTIFF alleges herein all violations which may have occurred or will occur prior to trial, but for which data may not have been available or submitted or apparent from the face of the reports or data submitted by DEFENDANTS to the Regional Water Quality Control Board or to PLAINTIFF prior to the filing of this Complaint. PLAINTIFF will file additional amended complaints if necessary to address DEFENDANTS' State and Federal violations which may occur after the filing of this Complaint. Each of DEFENDANTS' violations is a  separate violation of the CWA.

40.    PLAINTIFF avers and believes and on such belief alleges, that without the imposition of appropriate civil penalties and the issuance of appropriate equitable relief, DEFENDANTS will continue to violate the CWA as well as State and Federal standards with respect to the enumerated discharges and releases at the Site.  PLAINTIFF avers and believes and on such belief alleges that the relief requested in this Complaint will redress the injury to PLAINTIFF and its members, prevent future injury, and protect the interests of its members which are or may be adversely affected by DEFENDANTS' violations of the CWA, as well as other State and Federal standards.

WHEREFORE, PLAINTIFF prays judgment against DEFENDANTS as set forth hereafter.

### B.  SECOND CLAIM FOR RELIEF

**Violation of RCRA - 42 U.S.C. § 6901 et seq.,  specifically 42 U.S.C.  § 6972(a)(1)(A)**

41.    PLAINTIFF realleges and incorporates by reference the allegations of Paragraphs 1 through 40 as though fully set forth herein including all allegations in EXHIBIT B incorporated herein by reference.

COMPLAINT FOR INJUNCTIVE RELIEF

42.    RCRA Section 7002(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A) permits an action against any person who violates a PERMIT, STANDARD or REGULATION pursuant to the RCRA.  Civil penalties may be assessed against any person or entity in violation of this section, under the provisions of the RCRA, 42 U.S.C. §§ 6928 (a) and (g).

43.    DEFENDANTS' storage and disposal of materials containing toxic levels of halogenated organic compounds and volatile organic compounds, defined as hazardous wastes under the RCRA, at the Site has caused the discharge of hazardous wastes to soil and groundwater in violation of regulations regarding the use and disposal of hazardous wastes. (RCRA Section 3004 (d),   42 U.S.C. §6924(d)).

44.    PLAINTIFF avers and believes and on such belief alleges that without the imposition of appropriate civil penalties and the issuance of appropriate equitable relief, DEFENDANTS will continue to violate a PERMIT, STANDARD or REGULATION pursuant to RCRA, specifically RCRA Section 3004 (d), 42 U.S.C. §6924(d).

45.    PLAINTIFF avers and believes and on such belief alleges that continuing violations of the RCRA by DEFENDANTS at the Site will irreparably harm PLAINTIFF and its members, for which harm PLAINTIFF and its members have no plain, speedy or adequate remedy at law.

WHEREFORE, PLAINTIFF prays judgment against DEFENDANTS as set forth hereafter.

### C.  THIRD CLAIM FOR RELIEF

**Violation of RCRA -  42 U.S.C. § 6901 et seq., specifically 42 U.S.C.  § 6972(a)(1)(B)**

46.    PLAINTIFF realleges and incorporates by reference the allegations of Paragraphs 1 through 45 as though fully set forth herein including all allegations in EXHIBIT B incorporated herein by reference.

47.    RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), provides that any person may commence a civil action against any person or governmental entity including a past or present generator, transporter, owner or operator of a treatment, storage or disposal facility who has contributed to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or to the environment.

48.    DEFENDANTS own and/or are past operators of the Site at which hazardous levels of lead and petroleum constituents have been stored in a manner which has allowed them to leach pollutants into soil and ground water beneath and adjacent to the Site.

COMPLAINT FOR INJUNCTIVE RELIEF                                              Page  10

1    49.    These pollutants are known to be hazardous to the environment and human health, and if

2    released into the environment in sufficient quantity pose an imminent and substantial risk.

3    50.    For purposes of the RCRA, halogenated organic compounds and other volatile organic

4    compounds, as detailed in the RCRA NOTICE at concentrations in excess of regulatory MCLs and

5    WQOs are" hazardous wastes" within the meaning of the statute.

6    51.    PLAINTIFF is informed and believes, and thereon alleges, that amounts of halogenated organic

7    compounds and other volatile organic compounds released by DEFENDANTS at the Site are in

8    sufficient quantity to pose an imminent and substantial risk to both the environment and human health.

9    52.    Continuing acts or failure to act by DEFENDANTS to address these violations will irreparably

10    harm PLAINTIFF and its members for which harm PLAINTIFF and its members have no plain, speedy

11    or adequate remedy at law.

12    WHEREFORE, PLAINTIFF prays judgment against DEFENDANTS as set forth hereafter.

13    **VIII.   PRAYER FOR RELIEF**

14    PLAINTIFF prays that the Court grant the following relief:

15    53.    Declare DEFENDANTS to have violated and to be in violation of the CWA;

16    54.    Issue an injunction ordering DEFENDANTS to immediately clean up and abate the Site  in

17    compliance with the CWA and applicable State and Federal standards;

18    55.    Order DEFENDANTS to pay civil penalties of $27,500.00 per violation per day for its  violations

19    of the CWA;

20    56.    Declare DEFENDANTS  to have violated and to be in violation of RCRA § 6972(a)(1)(A) for

21    violation of a PERMIT, STANDARD or REGULATION regarding the storage and disposal of

22    hazardous wastes, specifically RCRA Section 3004 (d),  42 U.S.C. §6924(d).

23    57.    Enjoin DEFENDANTS from storing and disposing of hazardous wastes at the Site  in a manner

24    which violates RCRA Section 3004 (d),  42 U.S.C. §6924(d).

25    58.    Order DEFENDANTS to pay civil penalties of $25,000.00 per violation per day for its  violations

26    of RCRA § 6972(a)(1)(A) ;

27

28

COMPLAINT FOR INJUNCTIVE RELIEF                                                    Page 11

1    59.    Declare DEFENDANTS to have violated and to be in violation of the RCRA for discharging

2    from the Site toxic pollutants which are known carcinogens and reproductive toxins in sufficient quantity

3    to pose an imminent and substantial risk to health;

4    60.    Enjoin DEFENDANTS from discharging toxic pollutants from the Site which toxins pose an

5    imminent and substantial risk to health and the environment;

6    61.    Order DEFENDANTS to pay PLAINTIFF's reasonable attorneys' fees and costs (including

7    expert witness fees), as provided by 33 U.S.C. § 1365(d) and applicable California law; and,

8    62.    Grant such other and further relief as may be just and proper.

9

10   DATED: March 3, 2008

11                                                      JERRY BERNHAUT
                                                       Attorney for Plaintiff
12                                                     NORTHERN CALIFORNIA RIVER WATCH

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

# Law Office of Jack Silver



P.O. Box 5469      Santa Rosa, California 95402
Phone 707-528-8175     Fax 707-528-8675
lhm28843@sbcglobal.net

**CERTIFIED MAIL --**
**RETURN RECEIPT REQUESTED**

August 6, 2007

Union Pacific Railroad Company
1400 Douglas St.
Omaha, NE 68179

West Coast Metals, Inc.
P. O. Box 791
Windsor, CA 95492

Daniel Guerra, President
Aeris, Inc.
P.O. Box 2328
Menlo Park, CA 94026

    *RE: Notice of Violations and Intent to File Suit Under the Clean Water Act*

Dear Managing Agents and/or Owners:

    Clean Water Act § 505(b), 33 U.S.C. § 1365(b), requires that sixty (60) days prior to the initiation of a civil action for violations under Clean Water Act § 505(a), 33 U.S.C. § 1365(a), a citizen must give notice of intent to sue to the alleged violator, the Environmental Protection Agency, and the State in which the violations occur.

    Northern California River Watch (hereafter, "River Watch") hereby places Union Pacific Railroad, West Coast Metals, Inc. and Aeris, Inc.(collectively hereafter identified as ("Polluters") on notice that following the expiration of sixty (60) days from the date of this NOTICE, River Watch intends to bring suit in the United States District Court against Polluters for their continuing violations of "an effluent standard or limitation", permit

condition or requirement and/or "an order issued by the Administrator or a State with respect to such standard or limitation" under Clean Water Act § 505(a)(1), 33 U.S.C. § 1365(a)(1), the Code of Federal Regulations, and the Basin Plan, as exemplified by Polluters' illegally discharging from the site described below, without an National Pollutant Discharge Elimination System ("NPDES") permit.

The Clean Water Act regulates the discharge of pollutants into navigable waters. The statute is structured in such a way that all discharge of pollutants is prohibited with the exception of several enumerated statutory exceptions. One such exception authorizes a polluter who has been issued a permit pursuant to the NPDES, to discharge designated pollutants at certain levels subject to certain conditions. The effluent discharge standards or limitations specified in a NPDES permit define the scope of the authorized exception to the 33 U.S.C. § 1311(a) prohibition. Without a NPDES permit, all discharges from Polluters' site identified below to waters of the United States, are illegal.

BACKGROUND

Union Pacific Railroad Company currently owns real property located at 99 Frances Street, Santa Rosa, California, Sonoma County Assessor's Parcel Number 37-012-1, hereinafter the "Site". Union Pacific Railroad Company is the successor in interest to Southern Pacific Transportation Company, formerly known as Northwestern Pacific Railroad Company.

In 1967 Northwestern Pacific Railroad Company leased the Site to West Coast Welders Supply which operated the Site as a scrap metal facility until June of 1979 at which time the lease was terminated. Site improvements during that time included a 60-foot truck scale, a disassembly building and material storage areas. Operations at the Site included disassembly of automobiles, steam cleaning of trucks and automobile parts, storage of metals, batteries and transformers, and miscellaneous refuse. These operations were located for the most part on the northern portion of the Site as shown by aerial photographs from the City of Santa Rosa Department of Public Works for the period 1970 through 1977. West Coast Welders Supply merged with Wine Country Gases, which was subsequently acquired by Aeris. Aeris is the current successor in interest to West Coast Welders Supply.

In June, 1979 Southern Pacific Transportation Company leased the Site to West Coast Metals, Inc. which used the Site for metal salvage recycling operations, including purchase of metal waste material from industrial businesses and sorting, condensing, and re-sale of metal scrap. A hydraulic press was used to flatten automobiles. Aerial photographs of the Site, taken during the time of West Coast Metals, Inc.'s lease, show the former disassembly building, the tractor trailer beds for storage of metals, large cylindrical storage containers, and numerous stockpiles of miscellaneous parts, tanks, cars and other debris scattered over

the entire Site. In 1986, the lease was terminated and West Coast Metals, Inc. abandoned its operations on the Site.

On July 11, 1988 the Regional Water Quality Control Board ("RWQCB") issued Cleanup and Abatement Order ("CAO") No. 88-101 to Southern Pacific Railroad, West Coast Welders Supply, and West Coast Metals, Inc. CAO No. 92-87 was issued to these same parties on June 17, 1992 replacing CAO No. 88-101. CAO No. 94-43 was issued to these parties on February 10, 1993 replacing CAO No. 92-87.

The Site is located adjacent to property at 1143 Briggs Avenue which is subject to separate CAOs issued from the RWQCB. CAO No. 92-17 was issued on January 17, 1992 to Richard L. Bradley, West Coast Scrap Producers, Donald S. Ethel J. Kesler, Irving Kesler and William Whitman, and West Coast Metals, Inc. The contamination originating on the 1143 Briggs Avenue site appears to be co-mingled with the contamination originating on the Site which is the subject of this NOTICE letter.

A total of 39 monitoring wells, 14 groundwater extraction wells, and 11 piezometers have been installed on and off the Site. Out of the 39 monitoring well, 37 remain in place. Groundwater monitoring activities have been conducted under Revised Monitoring and Reporting Order No. 94-43, issued on July 3, 2001. Results of on-going monitoring and investigation of the Site confirmed the presence of halogenated organic compounds in groundwater extending approximately one-half mile to the west of the Site. Chemicals found in groundwater in the area investigated include trichloroethylene ("TCE") at up to 23,000 parts per billion (ppb), 1,1.1-trichloroethane at up to 5,800 ppb, freon 113 at up to 19,000 ppb, benzene at up to 18 ppb and other related volatile organic compounds ("VOCs"). Other compounds previously detected in groundwater include heavy metals and fuel constituents.

Extensive domestic well sampling was conducted during 1991 and 2002, primarily in the area west of the Site. In 1991 laboratory results revealed VOCs contamination in groundwater in 33 residential wells, including TCE at up to 150 ppb. In 2002 laboratory results revealed VOCs contamination in groundwater in domestic wells, including TCE at up to 36 ppb. The Site is located within 1,000 feet of a large, City of Santa Rosa municipal well, which was found to be contaminated with TCE, 1,11-trichloroethane, freon 113. and 1,1-dichloroethene.

The Site is in the vicinity of Santa Rosa Creek, a tributary of the Russian River. Pollutants discharged from the Site migrate through ground water tributaries into Santa Rosa Creek and the Russian River, both waters of the United States.

On February 7, 1994, Polluters began operating an on-site groundwater extraction and treatment system as an interim remedial measure. On November 2, 1994 they added an off-site extraction and treatment system. Together, the treatment system includes 9 on-site

extraction wells and 4 off-site extraction wells. The interim remedial system involves extraction and treatment of contaminated groundwater from the upper 3 water-bearing zones. Groundwater is treated in an air stripper to remove VOCs. River Watch contends that further remedial actions are necessary for effective cleanup of all impacted aquifers.

The April 15, 2002 *Draft Pilot Study Work Plan* and March 24, 2005 *Addendum to Pilot Study Work Plan* were submitted by Polluters to the RWQCB. Both documents propose the scope of work and schedule for conducting an in-situ bioremediation pilot study for remediation of chlorinated VOCs at the Site. Data generated during the pilot study will be evaluated to determine an appropriate, final remedial action to achieve water quality objectives within a reasonable time frame.

NOTICE

The Clean Water Act requires that any notice regarding an alleged violation of an effluent standard or limitation, or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the following:

1.    **The specific standard, limitation, or order alleged to have been violated.**

To comply with this requirement River Watch has noticed Polluters of the fact they have no NPDES permit allowing them to discharge pollutants to waters of the United States as required by Clean Water Act § 301(a), 33 U.S.C. § 1311(a) and Clean Water Act §§ 402(a) and 402(b), 33 U.S.C. § 1342(a) and 1342(b).

2.    **The activity alleged to constitute a violation.**

To comply with this requirement River Watch has set forth above narratives describing with particularity the activities leading to violations. The major activity is the discharging of pollutants from Polluters' Site to surface waters. These activities are detailed in this NOTICE as well as in the records of the RWQCB, local fire department and the City of Santa Rosa.

3.    **The discharger responsible for the alleged violation.**

The discharger responsible for the alleged violations are the entities collectively referred to as "Polluters" throughout this NOTICE.

4.    **The location of the alleged violation.**

The location or locations of the various violations are identified in the BACKGROUND section of this NOTICE and in records either created or maintained by or for Polluters which relate to Polluters' activities alleged herein.

5.    **The date or dates of violation or a reasonable range of dates during which the alleged activities occurred.**

As described in the BACKGROUND section of this NOTICE, this Site has been in continuous violation from 1970 to the present. However, this NOTICE covers only the statutory period of limitations to date running from July 31, 2002 through July 31, 2007. River Watch will from time to time update and supplement this NOTICE to include all violations which occur after the date of this NOTICE. The majority of Polluters' violations set forth herein, such as discharging pollutants to waters of the United States without a NPDES permit, failure to obtain a NPDES permit, failure to implement the requirements of the Clean Water Act, failure to meet water quality objectives, etc., are continuous, and therefore each day is a violation. River Watch believe all violations set forth in this NOTICE are continuing in nature or will likely continue after the filing of a lawsuit. Specific dates of violations are evidenced in Polluters' own records (or lack thereof) or files and records of other agencies including the RWQCB, City of Santa Rosa, County Health and local police and fire departments.

6.    **The full name, address, and telephone number of the person giving notice.**

The entity giving this Notice is Northern California River Watch, 6741 Sebastopol Ave., Suite 140, Sebastopol, CA 95472, telephone number 707-824-4372.

River Watch is a non-profit corporation dedicated to the protection and enhancement of the waters of the State of California including all rivers, creeks, streams and groundwater in Northern California. River Watch is organized under the laws of the State of California.

VIOLATIONS

From July 31, 2002 through July 31, 2007, Polluters have violated the Clean Water Act, the Basin Plan and the Code of Federal Regulation for discharging pollutants into waters of the United States without an NPDES permit. Polluters have also caused waste to be discharged or deposited where it is, or probably will be, discharged into the waters of the State of California and the United States, and creates a condition of pollution or nuisance. Continuing discharges as identified herein are in violation of the Clean Water Act, the Porter-Cologne Water Quality Control Act and provisions of the Water Quality Control Plan for the North Coast Region ("Basin Plan").

Beneficial uses of areal groundwater include domestic, irrigation, and industrial supply. Beneficial uses of Santa Rosa Creek, a tributary to the Laguna de Santa Rosa and the Russian River are as follows:

a.    municipal and domestic supply
b.    agricultural supply
c.    industrial process supply
d.    groundwater recharge
e.    navigation
f.    hydropower generation
g.    water contact recreation
h.    non-contact water recreation
i.    commercial and sport fishing
j.    warm freshwater habitat
k.    cold freshwater habitat
l.    wildlife habitat
m.    migration of aquatic organisms
n.    spawning, reproduction, and/or early development.

Water quality objectives in the Basin Plan are adopted to ensure protection of the beneficial uses of water. The most stringent water quality objectives for protection of all beneficial uses are selected as the protective water quality criteria. Alternative cleanup and abatement actions must evaluate the feasibility of, at a minimum: (a) cleanup to background levels, (b) cleanup to levels attainable through application of best practicable technology, and (c) cleanup to protective water quality criteria levels.

Discharge prohibitions contained in the Basin Plan apply to this Site. State Water Resources Control Board Resolution 68-16 (Statement of Policy With Respect To Maintaining High Quality of Waters in California) applies to this Site. State Water Resources Control Board Resolution 92-49 also applies to this Site and sets forth Policies and Procedures for Investigation and Cleanup and Abatement of Discharges under Section 13304 of the California Water Code.

Clean Water Act §301(a), 33 U.S.C. §1311(a), the Environmental Protection Agency and the State of California have formally concluded that the violations by Polluters as set forth in this NOTICE are prohibited by law. Beneficial uses of Santa Rosa Creek, the Russian River and its tributaries in the vicinity of the Site are being affected in a prohibited manner by these violations. Pursuant to Clean Water Act § 304, 33 U.S.C. §1311, the Environmental Protection Agency and the State have identified Polluters' Site as a point source, the discharges from which contribute to violations of applicable water quality standards.

These enumerated violations are based upon review of the RWQCB files for Polluters as well as studies conducted by Polluters in compliance with orders from regulatory agencies. In addition to all of the above violations, this NOTICE covers any and all violations evidenced by Polluters' records and monitoring data which Polluters have submitted (or failed

to submit) to the RWQCB or other agencies. This NOTICE also covers any and all violations which may have occurred but for which data may not have been available or submitted or apparent from the face of the reports or data submitted by Polluters to the RWQCB or other agencies.

Pursuant to CWA § 309(d), 33 U.S.C. § 1319(d), each of the above described violations of the Clean Water Act subjects the violator to a penalty of up to $32,500.00 per day per violation for violations occurring within five (5) years prior to the initiation of a citizen enforcement action. In addition to civil penalties, River Watch will seek injunctive relief preventing further violations of the Clean Water Act pursuant to Clean Water Act §§ 505(a) and 505(d), 33 U.S.C. §§ 1365(a) and 1365(d), and such other relief as is permitted by law. Lastly, Clean Water Act § 505(d), 33 U.S.C. § 1365(d), permits prevailing parties to recover costs and fees.

The violations of Polluters as set forth in this NOTICE affect the health and enjoyment of members of River Watch who reside and recreate in the Russian River watershed. The members of River Watch use this watershed for domestic water supply, agricultural water supply, recreation, sports, fishing, swimming, shell fish harvesting, hiking, photography, nature walks and the like. Their health, use and enjoyment of this natural resource is specifically impaired by Polluters' violations of the Clean Water Act as set forth herein.

CONTACT INFORMATION

River Watch has retained legal counsel to represent them in this matter. All communications should be addressed to:

Jack Silver, Esquire
Law Office of Jack Silver
P.O. Box 5469
Santa Rosa, CA 95402
Tel. 707-528-8175  /  Fax. 707-528-8675

CONCLUSION

River Watch believes this NOTICE sufficiently states grounds for filing suit. At the close of the 60-day notice period or shortly thereafter River Watch intends to file a citizen's suit against Polluters for violations at the Site under Clean Water Act § 505(a)

During the 60-day notice period, River Watch is willing to discuss effective remedies for the violations noted in this NOTICE. However, if Polluters wish to pursue such discussions in the absence of litigation, it is suggested those discussions be initiated within the next twenty (20) days so that they may be completed before the end of the 60-day notice

period.    River Watch does not intend to delay the filing of a lawsuit if discussions are continuing when that period ends.

Sincerely,

Jack Silver

cc:

Stephen L. Johnson, Administrator
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Wayne Nastri, Regional Administrator
U.S. Environmental Protection Agency, Region 9
75 Hawthorne Street
San Francisco, California 94105-3901

Dorothy R. Rice, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California 95812-0100

W. H. Pohle, Agent for Service of Process
Union Pacific Railroad Company
10031 Foothills Blvd. #200
Roseville, CA 95747

Jack Gardner, Agent for Service of Process
West Coast Metals, Inc.
10439 Old Redwood Highway
Windsor, CA 95492

# EXHIBIT B

# Law Office of Jack Silver



P.O. Box 5469    Santa Rosa, California 95402
Phone 707-528-8175    Fax 707-528-8675
lhm28843@sbcglobal.net

**REGISTERED MAIL
RETURN RECEIPT REQUESTED**

August 6, 2007

Union Pacific Railroad Company
1400 Douglas St.
Omaha, NE 68179

West Coast Metals Inc.
P O Box 791
Windsor, CA 953492

Daniel Guerra, President
Aeris, Inc.
P.O. Box 2328
Menlo Park, CA 94026

**RE:** *Notice of Violations and Intent to File Suit Under the Resource Conservation and Recovery Act ("RCRA")*

Dear Managing Agents and/or Owners:

On behalf of Northern California River Watch ("River Watch"), I am providing statutory notification to Union Pacific Railroad Company, West Coast Metals, Inc. and Aeris, Inc. collectively hereafter identified as ("Polluters"), of their continuing and ongoing violations of the Federal Resource Conservation and Recovery Act ("RCRA") 42 U.S.C. § 6901 et seq., in conjunction with the continuing pollution at the real property site described below.

River Watch hereby notifies Polluters that at the expiration of the appropriate notice periods under RCRA, River Watch intends to commence a civil action against Polluters on the following grounds:

1.    Polluters' use and storage of scrap metal, automobile parts and industrial metal waste has resulted in the leaching into soil and groundwater of halogenated organic compounds and other pollutants at the site identified in this NOTICE, which has

and continues to violate permits, standards, regulations, conditions, requirements or prohibitions regarding storage of pollutants pursuant to RCRA [42 U.S.C. § 6972(a)(1)(A)];

2.    Polluters' operations at the site identified in this NOTICE have caused contamination of soil and groundwater which presents an imminent and substantial endangerment to human health and the environment [42 U.S.C. § 6972(a)(1)(B)].

BACKGROUND

Union Pacific Railroad Company currently owns real property located at 99 Frances Street, Santa Rosa, California, Sonoma County Assessor's Parcel Number 37-012-1, hereinafter the "Site". Union Pacific Railroad Company is the successor in interest to Southern Pacific Transportation Company, formerly known as Northwestern Pacific Railroad Company.

In 1967 Northwestern Pacific Railroad Company leased the Site to West Coast Welders Supply which operated the Site as a scrap metal facility until June of 1979 at which time the lease was terminated. Site improvements during that time included a 60-foot truck scale, a disassembly building and material storage areas. Operations at the Site included disassembly of automobiles, steam cleaning of trucks and automobile parts, storage of metals, batteries and transformers, and miscellaneous refuse. These operations were located for the most part on the northern portion of the Site as shown by aerial photographs from the City of Santa Rosa Department of Public Works for the period 1970 through 1977. West Coast Welders Supply merged with Wine Country Gases, which was subsequently acquired by Aeris. Aeris is the current successor in interest to West Coast Welders Supply.

In June, 1979 Southern Pacific Transportation Company leased the Site to West Coast Metals, Inc. which used the Site for metal salvage recycling operations, including purchase of metal waste material from industrial businesses and sorting, condensing, and re-sale of metal scrap. A hydraulic press was used to flatten automobiles. Aerial photographs of the Site, taken during the time of West Coast Metals. Inc.'s lease, show the former disassembly building, the tractor trailer beds for storage of metals, large cylindrical storage containers, and numerous stockpiles of miscellaneous parts, tanks, cars and other debris scattered over the entire Site. In 1986, the lease was terminated and West Coast Metals Inc. abandoned its operations on the Site.

On July 11, 1988 the Regional Water Quality Control Board ("RWQCB") issued Cleanup and Abatement Order ("CAO") No. 88-101 to Southern Pacific Railroad, West Coast Welders Supply, and West Coast Metals, Inc. CAO No. 92-87 was issued to these same parties on June 17, 1992 replacing CAO No. 88-101. CAO No. 94-43 was issued to these parties on February 10, 1993 replacing CAO No. 92-87.

The Site is located adjacent to property at 1143 Briggs Avenue which is subject to separate CAOs issued from the RWQCB.   CAO No. 92-17 was issued on January 17, 1992 to Richard L. Bradley, West Coast Scrap Producers, Donald S. Ethel J. Kesler, Irving Kesler and William Whitman, and West Coast Metals, Inc.   The contamination originating on the 1143 Briggs Avenue site appears to be co-mingled with the contamination originating on the Site which is the subject of this NOTICE letter.

A total of 39 monitoring wells, 14 groundwater extraction wells, and 11 piezometers have been installed on and off the Site.   Out of the 39 monitoring well, 37 remain in place. Groundwater monitoring activities have been conducted under Revised Monitoring and Reporting Order No. 94-43, issued on July 3, 2001.  Results of on-going monitoring and investigation of the Site confirmed the presence of halogenated organic compounds in groundwater extending approximately one-half mile to the west of the Site. Chemicals found in groundwater in the area investigated include trichloroethylene ("TCE") at up to 23,000 parts per billion (ppb), 1,l.l-trichloroethane at up to 5,800 ppb, freon 113 at up to 19,000 ppb, benzene at up to 18 ppb and other related volatile organic compounds ("VOCs"). Other compounds previously detected in groundwater include heavy metals and fuel constituents.

Extensive domestic well sampling was conducted during 1991 and 2002, primarily in the area west of the Site.   In 1991 laboratory results revealed VOCs contamination in groundwater in 33 residential wells, including TCE at up to 150 ppb.   In 2002 laboratory results revealed VOCs contamination in groundwater in domestic wells, including TCE at up to 36 ppb.   The Site is located within 1,000 feet of a large, City of Santa Rosa municipal well, which was found to be contaminated with TCE, 1,11-trichloroethane, freon 113. and 1,1-dichloroethene.

The Site is in the vicinity of Santa Rosa Creek, a tributary of the Russian River. Pollutants discharged from the Site migrate through ground water tributaries into Santa Rosa Creek and the Russian River, both waters of the United States.

On February 7, 1994, Polluters  began operating an on-site groundwater extraction and treatment system as an interim remedial measure.   On November 2, 1994 they added an off-site extraction and treatment system.   Together, the treatment system includes 9 on-site extraction wells and 4 off-site extraction wells.   The interim remedial system involves extraction and treatment of contaminated groundwater from the upper 3 water-bearing zones. Groundwater is treated in an air stripper to remove VOCs. River Watch contends that further remedial actions are necessary for effective cleanup of all impacted aquifers.

The April 15, 2002 *Draft Pilot Study Work Plan* and March 24, 2005 *Addendum to Pilot Study Work Plan* were submitted by Polluters to the RWQCB.  Both documents propose the scope of work and schedule for conducting an in-situ bioremediation pilot study for remediation of chlorinated VOCs at the Site. Data generated during the pilot

study will be evaluated to determine an appropriate final remedial action to achieve water quality objectives within a reasonable time frame.

NOTICE

RCRA requires that any notice regarding an alleged violation of an effluent standard or limitation, or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the following:

1.    **The specific standard, limitation, or order alleged to have been violated.**

To comply with this requirement River Watch has noticed Polluters of the fact that they have no permit issued pursuant to RCRA allowing to store, handle or treat hazardous materials at the Site.

2.    **The activity alleged to constitute a violation.**

To comply with this requirement River Watch has set forth above narratives describing with particularity the activities leading to violations. The major activity is the discharging of pollutants from Polluters' Site to surface waters. These activities are detailed in this NOTICE as well as in the records of the RWQCB, local fire department and the City of Santa Rosa.

3.    **The discharger responsible for the alleged violation.**

The discharger responsible for the alleged violations are the entities collectively referred to as "Polluters" throughout this NOTICE.

4.    **The location of the alleged violation.**

The location or locations of the various violations are identified in the BACKGROUND section of this NOTICE and in records either created or maintained by or for Polluters which relate to Polluters' activities alleged herein.

5.    **The date or dates of violation or a reasonable range of dates during which the alleged activities occurred.**

As described in the BACKGROUND section of this NOTICE, this Site has been in continuous violation from 1970 to the present. However, this NOTICE covers only the statutory period of limitations to date running from July 31, 2002 through July 31, 2007. River Watch will from time to time update and supplement this NOTICE to include all violations which occur after the date of this NOTICE. The majority of the violations such as discharging pollutants to ground water or waters of the United States, causing

imminent and substantial danger, failure to obtain proper permits etc., are continuous, and therefore each day is a violation. River Watch believes all violations set forth in this NOTICE are continuing in nature or will likely continue after the filing of a lawsuit. Specific dates of violations are evidenced in Polluters' own records (or lack thereof) or files and records of other agencies including the Regional Water Quality Control Board, County Health, local police and fire departments and City of Santa Rosa.

6.    **The full name, address, and telephone number of the person giving notice.**

The entity giving this Notice is Northern California River Watch, 6741 Sebastopol Ave., Suite 140, Sebastopol, CA 95472, telephone number 707-824-4372.

River Watch is a non-profit corporation dedicated to the protection and enhancement of the waters of the State of California including all rivers, creeks, streams and groundwater in Northern California. River Watch is organized under the laws of the State of California.

REGULATORY STANDARDS

Water quality objectives in the Basin Plan are adopted to ensure protection of the beneficial uses of water. The most stringent water quality objectives for protection of all beneficial uses are selected as the protective water quality criteria. Alternative cleanup and abatement actions must evaluate the feasibility of, at a minimum: (a) cleanup to background levels, (b) cleanup to levels attainable through application of best practicable technology, and (c) cleanup to protective water quality criteria levels.

The RWQCB has adopted a Water Quality Control Plan ("Basin Plan") which designates all surface and groundwater within the North Coast region as capable of supporting domestic water supply. The RWQCB has adopted Maximum Contaminant Levels ("MCLs") and/or Water Quality Objectives ("WQOs") for petroleum constituents and other pollutants in surface and groundwater within the region. As discussed herein, Polluters have and are exceeding these levels and objectives.

VIOLATIONS

From July 31, 2002 through July 31, 2007, Polluters have caused or permitted, cause or permit, or threaten to cause or permit waste to be discharged from or deposited on the Site where it is, or probably will be, discharged into the waters of the state and creates, or threatens to create, a condition of pollution or nuisance. Continuing discharges are in violation of RCRA, the Porter-Cologne Water Quality Control Act and provisions of the Water Quality Control Plan for the North Coast Region (Basin Plan).

Beneficial uses of areal groundwater include domestic, irrigation, and industrial supply. Beneficial uses of Santa Rosa Creek, a tributary to the Laguna de Santa Rosa and the Russian River are:

a.  municipal and domestic supply
b.  agricultural supply
c.  industrial process supply
d.  groundwater recharge
e.  navigation
f.  hydropower generation
g.  water contact recreation
h.  non-contact water recreation
I.  commercial and sport fishing
j.  warm freshwater habitat
k.  cold freshwater habitat
l.  wildlife habitat
m.  migration of aquatic organisms
n.  spawning, reproduction, and/or early development.

The California Water Code and regulations and policies developed thereunder, require cleanup and abatement of discharges and threatened discharges of waste to the extent feasible. Cleanup and abatement activities are to provide attainment of background levels of water quality, or the highest water quality that is reasonable if background levels of water quality cannot be restored. Alternative cleanup levels greater than background concentration shall be permitted only if the discharger demonstrates: a) that it is not feasible to attain background levels; b) the alternative cleanup levels are consistent with the maximum benefit to the people of the State; c) alternative cleanup levels will not unreasonably affect present and anticipated beneficial uses of such water; and d) they will not result in water quality less than prescribed in the Basin Plan and Policies adopted by the State and RWQCB.

Discharge prohibitions contained in the Basin Plan apply to this Site. State Water Resources Control Board Resolution 68-16 (Statement of Policy With Respect To Maintaining High Quality of Waters in California) applies to this Site. State Water Resources Control Board Resolution 92-49 also applies to this Site and sets forth Policies and Procedures for Investigation and Cleanup and Abatement of Discharges under Section 13304 of the California Water Code.

1.  Permits, Standards and Regulations
    42 U.S.C. § 6972(a)(1)(A)

Halogenated organic compounds have been characterized as "hazardous waste" and "solid waste" within the meaning of RCRA provisions, 40 CFR § 261.31.

Accordingly, all regulatory mandates applicable to hazardous or solid waste apply to the use, storage and disposal of halogenated organic compounds.

Between approximately July 31, 2002 and July 31, 2007, Polluters have caused halogenated organic compounds and other hazardous waste to be discharged or deposited where it is, or probably will be, discharged into waters of the State and now creates, or threatens to create, conditions of pollution or nuisance. The discharges and threatened discharges of such petroleum waste are deleterious to the beneficial uses of water, and are creating and threaten to create various conditions of pollution and nuisance which will continue unless the discharges and threatened discharges are permanently abated. Polluters have no permit for the storage, treatment or disposal of hazardous waste on the Site.

2.    Imminent and Substantial Endangerment
       42 U.S.C. § 6972(a)(1)(B)

Between July 31, 2002 and July 31, 2007, Polluters have allowed significant quantities of hazardous constituents and other pollutants to be discharged to soil and groundwater on the Site and near adjacent properties.  The contaminant levels in groundwater at the Site are significantly greater than the allowable MCL and/or WQO for the constituents. All of these pollutants are known to harm both plants and animals. In their concentration at the Site, these pollutants are creating an imminent and substantial endangerment to public health and the environment.

The violations alleged in this NOTICE are knowing and intentional in that Polluters in the past have used and stored halogenated organic compounds and other hazardous waste at the Site which are known to contain hazardous substances. Polluters have known of the contamination at the Site for decades, and have also known that failing to promptly remediate the pollution allows the contamination to migrate through soil and groundwater at and adjacent to the Site, as well as to continually contaminate and re-contaminate actual and potential sources of drinking water in addition to surface waters. Polluters do not have now, nor have they ever had a Permit allowing them to discharge pollutants to waters of the State of California or the United States.

Past or current violations of RCRA authorize the assessment of civil penalties. The enforcement provisions of 42 U.S.C. §§ 6928(a) and 6928(g) provide for penalties when conditions of hazardous waste disposal have been alleged – as River Watch has alleged herein with respect to Polluters' Site.  Accordingly, under these provisions, persons or entities violating RCRA are subject to substantial liability to the United States on a per day basis.

Violations of RCRA of the type alleged herein are a major cause of the continuing decline in water quality and pose a continuing threat to existing and future drinking water supplies of Northern California. With every discharge, groundwater supplies are

contaminated. These discharges can and must be controlled in order for the groundwater supply to be returned to a safe source of drinking water.

In addition to the violations set forth above, this NOTICE is intended to cover all violations of RCRA by Polluters evidenced by information which becomes available to River Watch after the date of this NOTICE.

The violations of Polluters as set forth in this NOTICE affect the health and enjoyment of members of River Watch who reside and recreate in the affected watershed areas. The members of River Watch use the watershed for domestic water supply, agricultural water supply, recreation, sports, fishing, swimming, shellfish harvesting, hiking, photography, nature walks and the like. Their health, use and enjoyment of this natural resource are conditions specifically impaired by the violations of RCRA as identified in this NOTICE; and in some cases, the economic interests of individual River Watch members have been directly impaired by the violations of Polluters.

CONTACT INFORMATION

River Watch has retained legal counsel to represent them in this matter. All communications should be addressed to:

Jack Silver, Esquire
Law Office of Jack Silver
P.O. Box 5469
Santa Rosa, CA 95402
Tel. (707) 528-8175
Fax (707) 528-8675

CONCLUSION

RCRA requires that a private party provide ninety (90) days prior notice to the alleged violator, the Administrator of the U.S. Environmental Protection Agency and the State in which the violation is alleged to have occurred before initiating an action for an imminent and substantial endangerment to human health or the environment. [42 U.S.C. § 6972(b)(2)(A)].

River Watch believes this NOTICE sufficiently states grounds for filing suit under the statutory provisions of RCRA as to the Site. At the close of the notice period or shortly thereafter, River Watch intends to file a suit against Polluters under the provisions of RCRA for each of the violations as alleged herein, and with respect to the existing conditions at the Site.

During the 90 day notice period, however, River Watch is willing to discuss effective remedies for the violations referenced in this NOTICE. However, if Polluters

wish to pursue such discussions in the absence of litigation, it is suggested those discussions be initiated within the next thirty (30) days so that they may be completed before the end of the 90-day notice period.   River Watch does not intend to delay the filing of a lawsuit if discussions are continuing when that period ends.

Very truly yours,

Jack Silver

cc:

Stephen L. Johnson, Administrator
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Wayne Nastri, Regional Administrator
U.S. Environmental Protection Agency, Region 9
75 Hawthorne Street
San Francisco, California 94105-3901

Dorothy R. Rice, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California 95812-0100

Mark Leary, Executive Director
Calif. Integrated Waste Management Board
1001 "I" Street
Sacramento, CA 95814

W. H. Pohle, Agent for Service of Process
Union Pacific Railroad Company
10031 Foothills Blvd. #200
Roseville, CA 95747

Jack Gardner, Agent for Service of Process
West Coast Metals, Inc.
10439 Old Redwood Highway
Windsor, CA 95492