**MICHAEL L. JOHNSON (SBN: 88884)**
**UNION PACIFIC RAILROAD COMPANY**
**Law Department**
10031 Foothills Boulevard, Suite 200
Roseville, CA  95747
General:         916-789-6400
Direct:          916-789-6231
Fax:             916-789-6227
Email:           MLJOHNS1@UP.COM

Attorneys for Defendants
UNION PACIFIC RAILROAD COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHERN CALIFORNIA WATCH, a non-profit Corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>UNION PACIFIC RAILROAD COMPANY, WEST COAST METALS INC., and DOES 1 – 10, Inclusive,<br><br>        Defendants. | Case No.:CV-01256-WDB<br><br>**DEFENDANT UNION PACIFIC RAILROAD COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>**Date:  August 27, 2008**<br>**Time:  1:30 p.m**<br>**Dept:  Courtroom 4**<br>**Judge:  Magistrate Judge Wayne D. Brazil** |

**TABLE OF CONTENTS**

I.   ISSUES PRESENTED.................................................................................................... 1

II.  FACTUAL BACKGROUND......................................................................................... 1

III. STATUTORY BACKGROUND .................................................................................... 1

IV.  ARGUMENT.................................................................................................................. 2

    A.    Standard on Motion to Dismiss................................................................................ 2

        1.    Federal Rule of Civil Procedure 12(b)(1).............................................. 2

        2.    Federal Rule of Civil Procedure 12(b)(6).............................................. 3

    B    Plaintiff's First Cause of Action Must be Dismissed for Lack of Subject Matter Jurisdiction For Failure to Provide the Mandatory Sixty-Day Notice ............................... 3

        1.    Plaintiff's CWA Notice Fails to Specify a Point Source ........................... 4

        2.    Plaintiff's CWA Notice Fails to Specify a Date of Alleged Violations ..... 6

    C.    Plaintiff's First, Second and Third Causes of Action Must be Dismissed for Failure to State a Claim................................................................................................. 7

        1.    Plaintiff's First Cause of Action Fails to State A Claim Because It States the Former West Coast Metals Site is the "Point Source".......................................... 7

        2.    Plaintiff's Third Cause of Action Fails to State a Claim Because Plaintiff Does Not Allege that Union Pacific Handled or Stored the Waste that Caused the Contaminated Soil and Groundwater........................................................... 7

        3.    Plaintiff's Third Cause of Action Fails to State a Claim Because Plaintiff Does Not Allege that Union Pacific is a Past or Present Generator, Transporter, or Owner or Operator of a Treatment, Storage or Disposal Facility........................... 9

# TABLE OF AUTHORITIES

## FEDERAL CASES

*ABB Industrial Systems, Inc. v. Prime Technology, Inc.*,
 120 F.3d 351 (2d Cir. 1997).................................................................................. 8, 9

*Ascon Properties, Inc. v. Mobil Oil Company*,
 866 F.2d 1149 (9th Cir. 1989) ..................................................................................... 8

*Atlantic States Legal Foundation, Inc. v. Stroh Die Casting Co.*,
 116 F.3d 814 (7th Cir. 1997) ........................................................................................ 5

*California Sportfishing Prot. Alliance v. City of W. Sacramento*
 905 F.Supp. 792 (E.D. Ca. 1995) ................................................................................. 6

*Clegg v. Cult Awareness Network*,
 18 F.3d 752 (9th Cir.1994) ........................................................................................... 3

*Connecticut Coastal Fishermen's Association v. Remington Arms Co.*,
 989 F.2d 1305 (2d Cir. 1993)....................................................................................... 8

*Department of Toxic Substances Control v Interstate Non-Ferrous Corp.*,
 298 F.Supp.2d 930 (E.D. Cal. 2003)........................................................................... 9

*First San Diego Properties v. Exxon*,
 859 F.Supp. 1313 (S.D.Cal.1994)............................................................................. 10

*Gwaltney v. Chesapeake Bay Foundation*,
 484 U.S. 49 (1987)................................................................................................. 4, 8

*Hallstrom v. Tillamook County*,
 493 U.S. 20 (1989).................................................................................................. 3, 4

*Headwaters, Inc. v. Talent Irrigation District*,
 243 F.3d 526 (9th Cir. 2001) ....................................................................................... 7

*Interfaith Community Organization v Honeywell International, Inc.*,
 263 F.Supp.2d 796 (D. New Jersey 2003)................................................................ 10

*Kokonen v Guardian Life Insurance Co. of America*,
 511 U.S. 375 (1994).................................................................................................... 2

*National Resources Defense Council v. Sw. Marine, Inc.,*
    236 F.3d 985 (9th Cir. 2000) .................................................................................................. 5

*Navarro v. Block,*
    250 F.3d 729 (9th Cir. 2001) .................................................................................................. 3

*Papasan v. Allain,*
    478 U.S. 265 (1986) ................................................................................................................ 3

*Resources Investment, Inc. v. U.S. Army Corps of Eng'rs,*
    151 F.3d 1162 (9th Cir. 1998) ................................................................................................ 2

*San Francisco BayKeeper, Inc., v. Tosco Corp.,*
    309 F.3d 1153 (9th Cir. 2002) ................................................................................................ 5

*Sanders v. Kennedy,*
    794 F.2d 478 (9th Cir.1986) ................................................................................................... 3

*Sopcak v N. Mountain Helicopter Serv.,*
    52 F.3d 817 (9th Cir. 1995) .................................................................................................... 2

*Stock W., Inc. v. Confederated Tribes,*
    873 F.2d 1221 (9th Cir. 1989) ................................................................................................ 2

*Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation,*
    143 F.3d 515 (9th Cir. 1998) .................................................................................................. 5

*Washington Trout v. McCain Foods,*
    45 F.3d 1351 (1995) ............................................................................................................ 3, 4

**FEDERAL STATUTES**

42 U.S.C. §§ 6901 (2000) ............................................................................................................. 2
42 U.S.C. § 6972(a)(1)(A) (2000) ....................................................................................... 2, 7, 8, 9
42 U.S.C. § 6972(a)(1)(B) (2000) ............................................................................................. 2, 9
42 U.S.C. § 6972(b) (2000) .......................................................................................................... 2
33 U.S.C. § 1251(a) (2000) ........................................................................................................... 1
33 U.S.C. §§ 1311(a), 1342 (2000) ............................................................................................... 2
33 U.S.C. § 1342(1) (2000) .......................................................................................................... 7

33 U.S.C. § 1362 (12) (2000) .................................................................................... 5, 7

33 U.S.C. §1362(14) (2000) .................................................................................. 2, 5, 7

33 U.S.C. § 1365(a)(1) (2000) ........................................................................................ 5

33 U.S.C. § 1365(b) (2000) ............................................................................................ 4

33 U.S.C. § 1365(b)(1)(A) (2000) .................................................................................. 4

33 U.S.C. §505(a)(1) (2000) ........................................................................................... 5

**FEDERAL RULE OF CIVIL PROCEDURE**

FRCP 12(b)(1) ............................................................................................................ 1, 3

FRCP 12(b)(6) ................................................................................................................ 3

**CODE OF FEDERAL REGULATIONS**

40 C.F.R. § 135.3(a)....................................................................................................... 4

iv

Union Pacific's Memorandum In Support Of Its Motion To Dismiss Plaintiff's Complaint- CV-01256-WDB

## I. ISSUES PRESENTED.

Defendant Union Pacific Railroad Company ("Union Pacific") files this motion to dismiss the complaint filed by Northern California River Watch ("River Watch"). This is a citizen suit under the federal Clean Water Act ("CWA") and the federal Resource Conservation and Recovery Act ("RCRA") about a vacant lot, known as the West Coast Metals Site, which is owned by Union Pacific and subject to the California Regional Water Quality Control Board's ("RWQCB") Cleanup and Abatement Order ("CAO") R1-2006-0048 and General NPDES Permit No. CAG91101. Although Union Pacific alone has been implementing the RWQCB's Interim Remedial Action at the West Coast Metals Site, River Watch attempts to claim in its complaint that Union Pacific is violating the CWA and the RCRA. Union Pacific moves to dismiss the first cause of action for lack of subject matter jurisdiction as authorized by Federal Rule of Civil Procedure ("FRCP") 12(b)(1) and the first, second and third cause of action for failure to state a claim upon which relief can be granted, as authorized by 12(b)(6).

## II. FACTUAL BACKGROUND.

Plaintiff is Northern California River Watch. Defendant is Union Pacific Railroad Company. Plaintiff also sued West Coast Metals, Inc and Does 1-10. Plaintiff sent a Notice of Intent to file suit under the CWA and RCRA on August 6, 2007 to Union Pacific, West Coast Metals, Inc., a former lessee of the site, and Aeris, Inc, successor in interest to West Coast Welders Supply and a former lessee of the site. Plaintiff did not sue Aeris, Inc.

The Interim Remedial Action at the West Coast Metals Site has been in place since October 1993. The purpose of the IRM is to treat chlorinated volatile organic compound impacted groundwater extracted from nine on-site extraction wells and four off-site extraction wells. The extracted groundwater is pumped to a treatment facility located on the site. The treated groundwater is discharged to an open flood control channel at the north end of the site.

## III. STATUTORY BACKGROUND.

The CWA is designed to "restore and maintain the chemical, physical, and biological integrity of the Nations' waters." 33 U.S.C. § 1251(a) (2000). The CWA prohibits the discharge of pollutants from a point source into waters of the United States without a valid permit known as a National Pollutant

1

Discharge Elimination System ("NPDES") permit. 33 U.S.C. §§ 1311(a), 1342 (2000). A point source is defined as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit . . ." 33 U.S.C. §1362(14) (2000). The California State Water Resources Control Board—acting through the individual RWQCB—has been delegated the responsibility to issue NPDES permits to discharges located in California.

The RCRA governs the handling, storage, disposal and treatment of solid and hazardous waste. 42 U.S.C. §§ 6901, *et seq* (2000). In contrast to the CWA's focus on the regulation of discharges to waters of the United States, RCRA regulates solid and hazardous waste disposal on land. *Res. Inv., Inc. v. U.S. Army Corps of Eng'rs,* 151 F.3d 1162, 1167 (9th Cir. 1998). The State of California administers the RCRA program in this State. A citizen can maintain a RCRA lawsuit against any person who is in violation the regulations implementing RCRA. 42 U.S.C. § 6972(a)(1)(A) (2000). In addition, a citizen can maintain a RCRA lawsuit, when in the past or present, the handling, storage treatment or disposal of solid or hazardous wastes poses "an imminent and substantial endangerment to health or the environment. 42 U.S.C. § 6972(a)(1)(B) (2000). Both provisions require that the citizen provide mandatory pre-suit notice sixty days prior to suit. 42 U.S.C. § 6972(b) (2000).

## IV. ARGUMENT.

### A. Standard on Motion to Dismiss.

#### 1. Federal Rule of Civil Procedure 12(b)(1).

Union Pacific moves to dismiss all causes of action in the complaint for lack of subject matter jurisdiction under FRCP 12(b)(1) because its contents were not properly delineated in the Notice as required by the mandatory condition precedent standard set out in *Hallstrom v. Tillamook County*, 493 U.S. 20, 33 (1989) and *Washington Trout v. McCain Foods*, 45 F.3d 1351, 1354 (1995). Federal courts are courts of limited jurisdiction. The courts are to presume that a cause lies outside its reach and the party asserting jurisdiction has the burden of rebutting this presumption. *Kokonen v Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); *Sopcak v N. Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995); *Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). A court should

ordinarily adjudicate a Rule 12(b)(1) motion before other Rule 12(b) motions because it invokes the propriety of the court's subject matter jurisdiction.

### 2. Federal Rule of Civil Procedure 12(b)(6).

Union Pacific also moves to dismiss all causes of action in the complaint under FRCP 12(b)(6) for failure to state a claim upon which relief can be granted. A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 731-732 (9th Cir. 2001). In ruling on a Rule 12(b)(6) motion, the complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir.1986). "However, the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir.1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### B. Plaintiff's First Cause of Action Must be Dismissed for Lack of Subject Matter Jurisdiction for Failure to Provide the Mandatory Sixty-Day Notice.

Plaintiff's CWA Notice is a perfunctory form letters. The Notice letters are legally inadequate, and consequently, plaintiff's first cause of action should be dismissed for lack of subject matter jurisdiction. Plaintiff fails to clear this arguably low notice hurdle because they fail to provide reasonably specific information regarding the location of the point source and the date of the alleged violations.

The United States Supreme Court and the Ninth Circuit strictly construe the CWA's requirements concerning the notice of intent to sue served prior to filing a CWA action, particularly the requirement that the plaintiff describe the alleged violation with reasonable specificity. *Hallstrom v. Tillamook County*, 493 U.S. 20, 31-33 (1989); *Washington Trout v. McCain Foods, Inc.*, 45 F.3d 1351, 1354 (9th Cir. 1995). These courts have also held that if a plaintiff does not comply with the CWA's mandatory notice requirements, its complaint must be dismissed for lack of subject matter jurisdiction. Plaintiff's generalized notice does not pass muster. It fails to provide even the bare minimum of detail sufficient to inform Union Pacific of the alleged CWA violations occurring at the former West Coast Metals site, so it can determine how to remedy them. Therefore, plaintiff's complaint must be dismissed because its notice is legally deficient, and therefore, subject matter jurisdiction over plaintiff's CWA claims does not attach.

1.  **Plaintiff's CWA Notice Fails to Specify a Point Source.**

A citizen cannot sue under the CWA without serving notice of its intent to file suit at least sixty days prior to commencing suit. 33 U.S.C. § 1365(b)(1)(A). The CWA provides that notice "shall be given in such manner as the [EPA] Administrator shall prescribe by regulation." 33 U.S.C. § 1365(b). The EPA issued regulations specifying that:

> Notice . . . shall include sufficient information to permit the recipient to identify the specific standard, limitation or order alleged to have been violated, the activity alleged to constitute a violation, the persons or person responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address and telephone number of the person giving notice.
>
> 40 C.F.R. § 135.3(a).[1]

The purpose of the notice is to give the defendant "an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit" and to give governmental regulators an opportunity to take action. *Gwaltney v. Chesapeake Bay Found.*, 484 U.S. 49, 59-61 (1987).

If the plaintiff does not comply with the notice provisions, then the suit must be dismissed because the mandatory condition precedent to subject matter jurisdiction has not been fulfilled. *Hallstrom v. Tillamook County*, 493 U.S. 20, 31-33 (1989) (strictly construing the notice requirements prior to commencing RCRA action, Court dismissed suit because plaintiff did not give mandatory sixty day notice). In the Ninth Circuit, if the notice does not strictly comply with the requirements, the case must be dismissed even if the deficiencies are merely technical. *Washington Trout v. McCain Foods, Inc.*, 45 F.3d 1351, 1354 (9th Cir. 1995)(because two of the named plaintiffs were not listed in the notice, the court found the notice insufficient as required by the regulations and dismissed the action for lack of subject matter jurisdiction). "A failure to strictly comply with the notice requirement acts as an absolute bar to bringing suit." *Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 520 (9th Cir. 1998) (applying *Hallstrom* to the same notice requirements under the Endangered Species Act).

In discussing whether notice was sufficient, the Ninth Circuit stated, "[i]n practical terms, the notice must be sufficiently specific to inform the alleged violator about what it is doing wrong, so that it will

---

1 The CWA notice requirements are virtually identical to the pre-lawsuit notice requirements under RCRA because they are both modeled after section 304 of the Clean Air Act Amendments. *Hallstrom v. Tillamook County*, 493 U.S. 20, 23, n.1 (1989); *Washington Trout v. McCain Foods, Inc.*, 45 F.3d 1351, 1353, n.3 (9th Cir. 1995). Case law interpreting a notice requirement

4

know what corrective actions would avert a lawsuit." *Nat'l Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 996 (9th Cir. 2000)(quoting *Atl. States Legal Found., Inc. v. Stroh Die Casting Co.*, 116 F.3d 814, 819 (7th Cir. 1997)). The notice letter must be "reasonably specific as to the nature and time of the alleged violations." *San Francisco BayKeeper, Inc., v. Tosco Corp.*, 309 F.3d 1153, 1155 (9th Cir. 2002). In addition, it must provide enough information so that the defendant can identify and correct the problem. *Id.*[2]

River Watch's CWA NOI provided the following information about the point source for the alleged un-permitted discharge to the waters of the United States:

1. "River Watch intends to bring suit in the United States District Court against Polluters for their continuing violations of 'an effluent standard or limitation,' permit condition or requirement and/or 'an order issued by the Administrator or a State with respect to such standard or limitation' under Clean Water Act §505(a)(1), 33 U.S.C. § 1365(a)(1), the Code of Federal Regulations, and the Basin Plan, as exemplified by Polluters' illegally discharging from the site described below, without a National Pollutant Discharge Elimination System ("NPDES") permit." Plaintiff's Exhibit A, CWA NOI, dated August 6, 2007, p. 2.

2. "River Watch has set forth above narratives describing with particularity the activities leading to violations. The major activity is the discharging of pollutants from Polluters' Site to surface waters. These activities are detailed in this NOTICE as well as in the records of the RWQCB, local fire department and the City of Santa Rosa." Plaintiff's Exhibit A, CWA NOI, dated August 6, 2007, p. 4.

3. "The location or locations of the various violations are identified in the BACKGROUND section of this NOTICE and in records either created or maintained by or for Polluters which relate to Polluters' activities alleged herein." Plaintiff's Exhibit A, CWA NOI, dated August 6, 2007, p. 4.

The CWA requires an NPDES permit for the discharge of a pollutant from a point source into waters of the United States. A "discharge of a pollutant" is defined as "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362 (12)(A). A "point source" is defined as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit . . . ." 33 U.S.C. § 1362(14). There is no reference to a "discernible, confined, or discrete

---

modeled after section 304 of the Clean Air Act Amendments is applicable to any law mandating the use of such notice requirements, such as the CWA or RCRA.
2 Although the *BayKeeper* court found that the notice provisions and their enforcing regulations require no more than "reasonable specificity," that court reiterated that "[t]he key language in the notice regulations is the phrase 'sufficient information to permit the recipient to identify' the alleged violations and bring itself into compliance." *BayKeeper*, 309 F.3d at 1158. As demonstrated below, River Watch's notice fails to meet that standard.

conveyance." There is no reference to ditches, culverts, canals or similar descriptions of geographical features of the former West Coast Metals site, which could arguably be a "discernible, confined, or discrete conveyance." There is no map attached to the notice illustrating the location of the alleged point source.

River Watch's CWA Notice fails to provide Union Pacific with even the "reasonably specific" information required to identify the alleged location of the point source discharging to the waters of the United States. The inadequate Notice deprived Union Pacific of its opportunity to correct any potential violation of the CWA and avoid this action. Consequently, this action must be dismissed for lack of subject matter jurisdiction.

### 2.   Plaintiff's CWA Notice Fails to Specify a Date of the Alleged Violations.

Plaintiff's notice regarding the date range of Union Pacific's alleged CWA violations falls far below the lowest acceptable standard. Plaintiff's CWA Notice states:

1. Union Pacific has violated the CWA, the Basin Plan and the Code of Federal Regulation for discharging pollutants into waters of the United States without an NPDES permit from "July 31, 2002 through July 31, 2007." Plaintiff's Exhibit A, CWA Notice, dated August 6, 2007, p. 5.

2. "As described in the BACKGROUND section of this NOTICE, this Site has been in continuous violation from 1970 to the present. However, this NOTICE covers only the statutory period of limitations to date running from July 31, 2002 through July 31, 2007. CWA Notice, dated August 6, 2007, p. 5.

There is no other information provided. In *California Sportfishing Prot. Alliance v. City of W. Sacramento*, the court found portions of the plaintiff's similarly worded notice inadequate. 905 F.Supp. 792, 800 (E.D. Ca. 1995). There, the notice stated: "For the previous five years on hundreds of occasions you have violated your NPDES permit. Further, you have consistently misreported and/or failed to report the results of your testings." That court held "[t]his portion of the notice letter fails to comply with the regulation because it is vague as to which portions of the permit have been violated and which test results were not reported or were misreported." Language to the effect that "[t]he previous five years on hundreds of occasions" does not give sufficient notice of the date or dates on which the violations are alleged to have occurred.

River Watch's CWA Notice fails to provide Union Pacific with even the "reasonably specific" information required to identify the dates of the alleged violation and thus deprived Union Pacific of its opportunity to correct it and avoid this action. Consequently, this action must be dismissed for lack of subject matter jurisdiction.

6

**C. Plaintiff's First, Second and Third Causes of Action Must be Dismissed for Failure to State a Claim.**

    **1. Plaintiff's First Cause of Action Fails to State A Claim Because It States the Former West Coast Metals Site is the "Point Source."**

River Watch's first cause of action should be dismissed for failure to state a claim because it alleges that Union Pacific has violated the CWA for failing to obtain an NPDES permit. First, this cause of action fails because Union Pacific is remediating the groundwater at the site in accordance with an NPDES permit issued by the RWQCB. Second, this cause of action should be dismissed for failure to state a claim because there is no additional discharge from a point source requiring an NPDES permit.

To establish a violation of the CWA's NPDES permit requirement, River Watch must allege that Union Pacific (1) discharged (2) a pollutant (3) to navigable waters (4) from a point source. *Headwaters, Inc. v. Talent Irrigation Dist.,* 243 F.3d 526, 532 (9th Cir. 2001). The CWA requires an NPDES permit for the discharge of a pollutant from a point source into waters of the United States. A "discharge of a pollutant" is defined as "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362 (12)(A). A "point source" is defined as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit . . ." 33 U.S.C. § 1362(14). Plaintiffs do not describe or refer to a "discernible, confined, or discrete conveyance." The complaint states that the West Coast Metals site is the point source. Complaint, ¶29:18-19, p7. If there is no discharge from a point source, no NPDES permit is required under the Clean Water Act. U.S.C. §1342(1); *Headwaters, Inc. v. Talent Irrigation Dist.,* 243 F.3d 526, 531-532 (9th Cir. 2001). River Watch statement that the "site is the point source" is vague and fails to meet even the most liberal understanding of a "discernible, confined, or discrete conveyance." River Watch has failed to state a claim for failure to obtain an NPDES permit.

    **2. Plaintiff's Third Cause of Action Fails to State A Claim Because Plaintiff Does Not Allege that Union Pacific Handled or Stored the Waste That Caused the Contaminated Soil and Groundwater.**

There is no cognizable cause of action for River Watch's second cause of action that Union Pacific violated 42 U.S.C. § 6972(a)(1)(A). River Watch's second cause of action fails to state a claim because it alleges at best a wholly past RCRA violation. Union Pacific's only current connection the former West Coast Metals site is as an owner, former lessor of the site, and the only party responding the RWQCB's

7

cleanup and abatement order. The property has been vacant since approximately 1986. The only activities now occurring at the site are the required groundwater extraction and treatment operations under CAO R1-2006-0048 and General NPDES Permit No. CAG91101. River Watch's RCRA Notice letter, quoting RWQCB's documents, highlights that Union Pacific is not currently handling or storing hazardous waste:

> In 1967 Northwestern Pacific Railroad Company leased the Site to West Coast Welders Supply[,] which operated the Site as a scrap metal facility until June of 1979 at which time the lease was terminated. Site improvements during that time included a 60-foot truck scale, a disassembly building and material storage areas. Operations at the Site included disassembly of automobiles, steam cleaning of trucks and automobile parts, storage of metals, batteries and transformers, and miscellaneous refuse. . . .
>
> In June, 1979 Southern Pacific Transportation Company leased the Site to West Coast Metals, Inc.[,] which used the Site for metal salvage recycling operations, including purchase of metal waste material from industrial businesses and sorting, condensing, and re-sale of metal scrap. A hydraulic press was used to flatten automobiles. Aerial photographs of the Site, taken during the time of West Coast Metals, Inc.'s lease, show the former disassembly building, the tractor trailer beds for storage of metals, large cylindrical storage containers, and numerous stockpiles of miscellaneous parts, tanks, cars and other debris scattered over the entire Site. In 1986, the lease was terminated and West Coast Metals Inc. abandoned its operations on the Site.

RCRA NOI, dated August 6, 2007, p. 2.

In order to sustain a claim under 42 U.S.C. § 6972(a)(1)(A), there must be a current or continuing violation of RCRA requirements. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation*, 484 U.S. 49, 49 (1987); *Ascon Properties, Inc. v. Mobil Oil Company*, 866 F.2d 1149, 1159 (9th Cir. 1989); *ABB Industrial Systems, Inc. v. Prime Technology, Inc.* 120 F.3d 351, 359 (2d Cir. 1997).

To establish a violation of 42 U.S.C. § 6972(a)(1)(A), a plaintiff must establish that the defendant is currently in violation of a "permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter." 42 U.S.C. § 6972(a)(1)(A); see also *Connecticut Coastal Fishermen's Ass'n v. Remington Arms Co.*, 989 F.2d 1305, 1315 (2d Cir. 1993) (dismissing claim under § 6972(a)(1)(A) because the "claim alleges a 'wholly past' RCRA violation"). River Watch states "DEFENDANTS' use and storage of scrap metal, automobile parts and industrial metal waste at the site, as described in detail in the RCRA NOTICE, regularly violates standards, regulations, conditions, requirements or prohibitions effective pursuant to the RCRA regarding storage of halogenated organic

compounds and other pollutants." Complaint, ¶7:3-6, p. 3. River Watch refers generally to Union Pacific and co-defendant West Coast Metals, Inc. as "Polluters" and "Defendants" when describing the basis for this cause of action. However in its notice of intent to sue, which is incorporated into the complaint and excerpted above, River Watch delineates the activities that support its RCRA claims. River Watch does not describe any activities that equate to the current storage or handling of pollutants at the site. River Watch has not alleged that Union Pacific is currently in violation of a permit or regulation, and therefore, River Watch's claims under 42 U.S.C. § 6972(a)(1)(A) should be dismissed. *ABB Industrial Systems, Inc. v. Prime Technology, Inc.*, 120 F.3d 351, 359 (2d Cir. 1997). River Watch's second cause of action should be dismissed for failure to state a claim because it fails to allege current conduct that violates RCRA §7002(a)(1)(A).

### 3. Plaintiff's Third Cause of Action Fails to State A Claim Because Plaintiff Does Not Allege that Union Pacific Is a Past or Present Generator, Transporter, or Owner or Operator of a Treatment, Storage or Disposal Facility.

There is no cognizable cause of action for River Watch's third cause of action that Union Pacific violated 42 U.S.C. § 6972(a)(1)(B). River Watch's third cause of action fails to state a claim because River Watch fails to allege Union Pacific is a past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage or disposal facility. Union Pacific's only connection to the property, beyond its ownership interest has been to be the sole party cleaning it under the terms of CAO R1-2006-0048 and General NPDES Permit No. CAG91101. Union Pacific is not a proper defendant as that term is defined in an imminent and substantial endangerment suit under RCRA.

For River Watch's to establish a 42 U.S.C. § 6972(a)(1)(B) claim, River Watch must allege: (1) Union Pacific was a past or present generator or transporter of solid or hazardous waste or past or present owner or operator of a solid or hazardous waste treatment, storage or disposal facility; (2) Union Pacific contributed to the handling, storage, treatment, transportation, or disposal of solid or hazardous waste; and, (3) the solid or hazardous waste in question may present an imminent and substantial endangerment to health or the environment. 42 U.S.C. § 6972(a)(1)(B); *Dept. of Toxic Substances Control v Interstate Non-Ferrous Corp.*, 298 F.Supp.2d 930, 971 (E.D. Cal. 2003) (citations omitted).

9

As illustrated by its RCRA notice letter, which is incorporated in its complaint, River Watch has not alleged that Union Pacific actively spilled hazardous chemicals or otherwise contaminated the site. RCRA NOI, dated August 6, 2007, p. 2. A straight forward reading of RCRA compels a finding that River Watch's third cause of action fails to state a claim because River Watch does not claim Union Pacific engaged in active human involvement with the waste that poses an imminent and substantial endangerment to health or the environment. 42 U.S.C. § 6972(a)(1)(B). *Interfaith Community Organization v Honeywell International, Inc.,* 263 F.Supp.2d 796, 831 (D. New Jersey 2003). Although not applicable under River Watch's allegations, even indifference in not investigating or cleaning up a property after contamination is discovered will not produce liability under RCRA § 7002 (a)(1)(B). *First San Diego Properties v. Exxon,* 859 F.Supp. 1313 (S.D.Cal.1994). River Watch's third cause of action should be dismissed for failure to state a claim because it fails to allege Union Pacific's past or current active conduct that is connected to the hazardous waste that may cause imminent and substantial endangerment.

## V.   CONCLUSION

For all the reasons set forth above, Union Pacific respectfully requests that the Court dismiss each and every claim for relief contained in the plaintiff's complaint.

DATED: May 16, 2008

UNION PACIFIC RAILROAD COMPANY


By: /S/ Mike L. Johnson

Attorneys for Defendant
UNION PACIFIC RAILROAD COMPANY

**CERTIFICATE OF SERVICE**

I, MELISSA B. HAGAN, hereby certify that a true and correct copy of the above and foregoing instrument was served in the following manner:

| | |
|---|---|
| Certified Mail | _____ |
| Facsimile | _____ |
| Messenger/Hand Delivery | _____ |
| Electronic Filing - Via Clerk | __x__ |

upon the following counsel of record:

Jack Silver, Esq.
Law Office of Jack Silver
Jerry Bernhaut, Esq.,
Post Office Box 5469
Santa Rosa, CA 95402-5469

on this <u>16th</u> day of <u>May</u>, 2008.

/S/ Melissa Hagan
Melissa Hagan