1  Cameron S. Kirk, Esq. (SB# 108013)
   Karin P. Beam, Esq. (SB# 112331)
2  SPAULDING McCULLOUGH & TANSIL LLP
   90 South E Street, Suite 200
3  P.O. Box 1867
   Santa Rosa, CA  95402
4  Telephone:    (707) 524-1900
   Facsimile:    (707) 524-1906
5  kirk@smlaw.com; beam@smlaw.com

6  Attorneys for Defendant
   WEST COAST METALS, INC.

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11  NORTHERN CALIFORNIA RIVER WATCH, a    Case No.:  3:08-cv-01256-MMC
    Non-Profit Corporation,
12                                        DEFENDANT WEST COAST METALS,
                      Plaintiff,          INC.'S NOTICE OF MOTION AND
13                                        MOTION TO DISMISS PLAINTIFF'S
           vs.                            COMPLAINT; MEMORANDUM OF
14                                        POINTS AND AUTHORITIES
    UNION PACIFIC RAILROAD COMPANY,
15  WEST COAST METALS, INC., and DOES 1-
    10, inclusive,                        Date:   August 29, 2008
16                                        Time:  9:00 a.m.
                      Defendants.         Courtroom:      7
17                                        Judge: Hon. Maxine M. Chesney

18         TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

19         PLEASE TAKE NOTICE THAT at 9:00 a.m. on August 29, 2008, or as soon thereafter as

20  the matter may be heard before the Honorable Maxine M. Chesney of the United States District

21  Court for the Northern District of California in Courtroom 7, 19th Floor of the United States

22  Courthouse located at 450 Golden Gate Avenue, San Francisco, California, defendant WEST

23  COAST METALS, INC. ("WCM") will move to dismiss the Complaint in this action pursuant to

24  Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP").

25         The grounds for this Motion are:

26         1.      The First Cause of Action for Discharge of Pollutants must be dismissed.  The Court

27  lacks subject matter jurisdiction, and the Cause of Action fails to state a claim upon which relief can

28  be granted.

                                          1

1    2.    The Second Cause of Action for violation of RCRA 42 U.S.C. §6972(1)(A) must be

2  dismissed for failure to state a claim upon which relief can be granted, under FRCP 12(b)(6).

3    3.    The Third Cause of Action for violation of RCRA 42 U.S.C. §6972(a)(1)(6) must be

4  dismissed for failure to state a claim upon which relief can be granted, under RFCP 12(b)(6).

5    This Motion is based upon this Notice, the Memorandum of Points and Authorities filed

6  herein, all pleading, files and record herein, and all matters and argument presented to the Court at

7  the hearing of this Motion.

8

9  DATED:  June 23, 2008                    SPAULDING McCULLOUGH & TANSIL LLP
                                            Attorneys for Defendant
10                                          WEST COAST METALS, INC.

11

12                                          By:    _____/s/ Karin P. Beam_____
                                                   Karin P. Beam
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT WEST COAST METALS, INC.'S NOTICE OF MOTION AND MOTION          3:08-cv-01256-MMC
TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I. STATEMENT OF FACTS

3   This action pertains to a vacant lot owned by defendant Union Pacific Railroad Company

4 ("Union Pacific"), located in Santa Rosa, California.  The lot is the subject of the California Regional

5 Water Quality Control Board's ("RWQCB") Cleanup and Abatement Order ("CAO") R1-2006-0048

6 and General NPDES Permit No. CAG91101.  Plaintiff Northern California River Watch ("River

7 Watch") claims that Union Pacific and West Coast Metals, Inc. ("WCM") are violating the CWA and

8 the RCRA.  WCM moves to dismiss the first cause of action for lack of subject matter jurisdiction

9 based on Federal Rule of Civil Procedure ("FRCP") 12(b)(1), and also moves to dismiss the first,

10 second and third causes of action for failure to state a claim upon which relief can be granted, per

11 FRCP 12(b)(6).

12

## II. THE REGULATORY STATUTES

13   The statutory scheme at issue in this case is designed to "restore and maintain the chemical,

14 physical, and biological integrity of the Nations' waters." 33 U.S.C. §1251(a)(2000).  The Federal

15 Clean Water Act ("CWA") prohibits the discharge of pollutants from a "point source" into waters of

16 the United States without a valid permit; a "point source" is defined as "any discernible, confined and

17 discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit . . . "  (33

18 U.S.C. §1362(14) (2000).)

19   In contrast to the CWA's focus on the regulation of discharges to waters of the United States,

20 RCRA regulates solid and hazardous waste disposal on land.  (42 U.S.C. §§6901, *et seq.* (2000); *Res.*

21 *Inv., Inc. v. U.S. Army Corps of Eng'rs*, 151 F.3d 1162, 1167 (9th Cir. 1998).)  While a citizen can

22 maintain an RCRA lawsuit when the handling, storage treatment or disposal of solid or hazardous

23 waters poses "an imminent and substantial endangerment to health or the environment," a mandatory

24 pre-suit notice sixty days is required.  (42 U.S.C. §6972(b) (2000).)

25

## III. LEGAL ARGUMENT

26 A.  Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

27   Federal courts are courts of limited jurisdiction.  The courts presume that a cause lies outside

28 its reach; the party asserting jurisdiction has the burden to rebut this presumption.  (*Kokonen v.*

DEFENDANT WEST COAST METALS, INC.'S NOTICE OF MOTION AND MOTION   3:08-cv-01256-MMC
TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

1  *Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); *Sopack v. N. Mountain Helicopter*

2  *Serv.*, 52 F.3d 817, 818 (9th Cir. 1995); *Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225

3  (9th Cir. 1989).)  A court should ordinarily adjudicate a Rule 12(b)(1) motion before other Rule 12(b)

4  motions because the Motion invokes the propriety of the court's subject matter jurisdiction.  WCM

5  moves to dismiss all causes of action in the Complaint for lack of subject matter jurisdiction under

6  FRCP 12(b)(1), based on the improper Notice given by River Watch.  The Notice fails to meet the

7  requirements set out in *Hallstrom v. Tillamook County*, 493 U.S. 20, 33 (1989) and *Washington Trout*

8  *v. McCain Foods*, 45 F.3d 1351, 1354 (1995).

9        WCM also moves to dismiss all causes of action in the Complaint under FRCP 12(b)(6) for

10  failure to state a claim upon which relief can be granted.  A Rule 12(b)(6) motion "tests the legal

11  sufficiency of a claim."  (*Navarro v. Block*, 250 F.3d 729, 731-732 (9th Cir. 2001).)  In ruling on a

12  Rule 12(b)(6) motion, the complaint is construed in the light most favorable to the non-moving party,

13  and all material allegations in the complaint are taken to be true.  (*Sanders v. Kennedy*, 794 F.2d 478,

14  481 (9th Cir. 1986).)  "However, the court is not required to accept legal conclusions cast in the form

15  of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."

16  (*Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-755 (9th Cir. 1994) (citing *Papasan v. Allain*,

17  478 U.S. 265, 286 (1986)).)

18        1.    <u>Plaintiff Failed to Provide the Mandatory Sixty-Day Notice; This Court Has No</u>

19              <u>Jurisdiction.</u>

20        The United States Supreme Court and the Ninth Circuit strictly construe the CWA's

21  requirements concerning the notice of intent to sue served prior to filing a CWA action, particularly

22  the requirement that the plaintiff describe the alleged violation with reasonable specificity (*Hallstrom*

23  *v. Tillamook County*, 493 U.S. 20, 31-33 (1989); *Washington Trout v. McCain Foods*, 45 F.3d 1351,

24  1354 (1995).)  These courts have held that if a plaintiff does not comply with the CWA's mandatory

25  notice requirements, its complaint must be dismissed for lack of subject matter jurisdiction.  Here,

26  River Watch's notice fails to provide detail sufficient to inform WCM of the alleged CWA violations.

27  Consequently, plaintiff's complaint must be dismissed – the mandatory notice was legally deficient,

28  and subject matter jurisdiction over its CWA claims cannot attach.

Suit cannot be brought under the CWA unless notice of the intent to file suit is provided at least sixty days before commencing litigation. 33 U.S.C. §1365(b)(l)(A). The requisite notice "shall be given in such manner as the [EPA] Administrator shall prescribe by regulation." 33 U.S.C. §1365(b). The EPA issued regulations specifying that:

> Notice . . . shall include sufficient information to permit the recipient to identify the specific standard, limitation or order alleged to have been violated, the activity alleged to constitute a violation, the persons or person responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address and telephone number of the person giving notice.

(40 C.F.R. §135.3(a).)

The purpose of the notice is to give the allegedly offending party "an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit," and to give governmental regulators an opportunity to take action. (*Gwaltney v. Chesapeake Bay Found*, 484 U.S. 49, 59-61 (1987).) If the plaintiff does not comply with the notice provisions, suit must be dismissed; subject matter jurisdiction does not exist. (*Hallstrom v. Tillamook County*, 493 U.S. 20, 31-33(1989) (strictly construing the notice requirements prior to commencing RCRA action, the Court dismissed the litigation because plaintiff did not provide the mandatory sixty day notice).)

In the Ninth Circuit, if the notice does not strictly comply with the requirements, the case must be dismissed <u>even</u> if the deficiencies are merely technical. (*Washington Trout v. McCain Foods, Inc.*, 45 F.3d 1351, 1354 (9th Cir. l995) (because two of the named plaintiffs were not listed in the notice, the court found the notice insufficient as required by the regulations and dismissed the action for lack of subject matter jurisdiction).) "A failure to strictly comply with the notice requirement acts as an absolute bar to bringing suit." (*Sw. Cir. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 520 (9th Cir. 1998) (applying *Hallstrom* to the same notice requirements under the Endangered Species Act).)

In its analysis of "sufficient notice," the Ninth Circuit has held that ". . . . the notice must be sufficiently specific to inform the alleged violator about what it is doing wrong, so that it will know what corrective actions would avert a lawsuit." (*Nat'l Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 996 (9th Cir. 2000) (quoting *Atl. States Legal Found., Inc. v. Stroh Die Casting Co.*, 116

5

F.3d 814, 819 (7th Cir. 1997).)  The notice letter must be "reasonably specific as to the nature and time of the alleged violations."  (*San Francisco BayKeeper, Inc.,* v. *Tosco Corp.,* 309 F.3d 1153, 1155 (9th Cir. 2002).)  The notice must provide enough information to allow the defendant to identify and correct the problem.  (*Id.*)

Here, plaintiff provided the following information about the "point source" for the alleged un-permitted discharge to the waters of the United States:

1. "River Watch intends to bring suit in the United States District Court against Polluters for their continuing violations of 'an effluent standard or limitation,' permit condition or requirement and/or 'an order issued by the Administrator or a State with respect to such standard or limitation' under Clean Water Act §505(a)(l), 33 U.S.C. §1365(a)(1), the Code of Federal Regulations, and the Basin Plan, as exemplified by Polluters' illegally discharging from the site described below, without a National Pollutant Discharge Elimination System ("NPDES") permit."  Plaintiff's Exhibit A, CWA NOI, dated August 6, 2007, p. 2.

2. "River Watch has set forth above narratives describing with particularity the activities leading to violations.  The major activity is the discharging of pollutants from Polluters' Site to surface waters.  These activities are detailed in this NOTICE as well as in the records of the RWQCB, local fire department and the City of Santa Rosa."  Plaintiff's Exhibit A. CWA NOI, dated August 6, 2007, p. 4.

3. "The location or locations of the various violations are identified in the BACKGROUND section of this NOTICE and in records either created or maintained by or for Polluters which relate to Polluters' activities alleged herein."  Plaintiffs Exhibit A, CWA NOI, dated August 6, 2007, p. 4.

Under the relevant regulatory scheme, a "discharge of a pollutant" is defined as "any addition of any pollutant to navigable waters from any point source."  33 U.S.C. §1362 (12)(A).  Most importantly, a "point source" is defined as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit . . . ."  33 U.S.C. §1.362(14).  In the case at bench, there is no reference whatsoever in plaintiff's notice to a "discernible, confined, or discrete conveyance."  There is no map attached to the notice describing the location of the alleged point source.  Plaintiff's general allegations are not helpful, and not sufficient.

River Watch's CWA Notice fails to provide the information required to identify the location of a point source allegedly discharging to the waters of the United States.  The inadequate Notice deprived WCM of an opportunity to correct any potential violations and avoid this action, if any violations even existed.  Consequently, this action must be dismissed for lack of subject matter jurisdiction.

2.     Plaintiff's CWA Notice Fails to Specify a Date of the Alleged Violations.

Plaintiff's notice regarding the date of the alleged CWA violations falls far below the lowest acceptable standard.  The Notice states broadly that there have been violations from "July 31, 2002 through July 31, 2007."  (Plaintiff's Exhibit A, CWA Notice, dated August 6, 2007, p. 5.)  There is no other information provided.

In *California Sportfishing Prot. Alliance v. City of W. Sacramento,* the court found portions of the plaintiff's similarly-worded notice inadequate.  (905 F.Supp. 792, 800 (E.D. Ca. 1995).)  There, the notice stated:  "For the previous five years on hundreds of occasions you have violated your NPDES permit.  Further, you have consistently misreported and/or failed to report the results of your testings."  The court held that language to the effect that "[t]he previous five years on hundreds of occasions" does not give sufficient notice of the date or dates on which the violations are alleged to have occurred.

River Watch's CWA Notice similarly fails to provide WCM with the "reasonably specific" information required to identify the dates of the alleged violations, and thus has deprived it of the opportunity to address the issue prior to litigation.  Consequently, this action must be dismissed for lack of subject matter jurisdiction.

B.     Plaintiff's First, Second and Third Causes of Action Must be Dismissed for Failure to State a Claim.

1.     Plaintiff's First Cause of Action Fails to State A Claim Because It States the Former WCM Site is the "Point Source."

Plaintiff's first cause of action alleges that WCM has violated the CWA for discharging pollutants from a point source without an NPDES permit.  To establish a violation of the CWA's NPDES permit requirement, plaintiff must allege that WCM (1) discharged (2) a pollutant (3) to navigable waters (4) from a "point source."  (*Headwaters, Inc. v. Talent Irrigation Dist., 243* F.3d 526, 532 (9th Cir. 2001).)  River Watch's cause of action fails because the groundwater at the site <u>is</u> being remediated in accordance with an NPDES permit issued by the RWQCB.  Moreover, as described above, plaintiff does not describe or refer to a "discernible, confined, or discrete conveyance."  The "point source" at issue is not specified with any particularity.  The complaint

7

1    states only that the WCM "site" is the point source.  (Complaint, ¶29:18-19, p7.)  Plaintiff's statement

2    that the "site is the point source" fails to meet even the most liberal understanding of a "discernible,

3    confined, or discrete conveyance."  Plaintiff has failed to state a claim for failure to obtain an NPDES

4    permit.  (See Motion to Dismiss filed herein by Union Pacific Railroad Company, and incorporated

5    herein by reference.)

6            2.    <u>Plaintiffs Third Cause of Action Fails to State A Claim Because Plaintiff Does Not</u>

7                    <u>Allege that WCM Handled or Stored the Waste That Caused the Contaminated Soil</u>

8                    <u>and Groundwater.</u>

9          There is no cognizable cause of action for River Watch's second cause of action that WCM

10    violated 42 U.S.C. §6972(a)(l)(A).  The claim fails because it alleges, at best, an historic RCRA

11    violation.  This property has been vacant since approximately 1986.  The only activities now

12    occurring at the site are the required groundwater extraction and treatment operations under CAO RI

13    - 2006-0048 and General NPDES Permit No. CAG91101.  Plaintiff's own RCRA Notice letter,

14    quoting RWQCB's documents, confirms that no one is currently handling or storing hazardous waste

15    at the site:

16            In 1967 Northwestern Pacific Railroad Company leased the Site to

17            West Coast Welders Supply[,] which operated the Site as a scrap metal
        facility until June of 1979 at which time the lease was terminated.

18            In June, 1979 Southern Pacific Transportation Company leased the Site

19            to West Coast Metals, Inc.[,]  In 1986, the lease was terminated and
        West Coast Metals Inc. abandoned its operations on the Site.

20            (RCRA NOl, dated August 6, 2007, p. 2, Exhibit A to the Complaint.)

21          In order to sustain a claim under 42 U.S.C. §6972(a)(l)(A), there must be a current or

22    continuing violation of RCRA requirements.  (*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay*

23    *Foundation,* 484 U.S. 49, 49 (1987); *Ascon Properties, Inc. v, Mobil Oil Company,* 866 F.2d 1149,

24    1159 (9th Cir. 1989); *ABB Industrial Systems, Inc. v. Prime Technolgy, Inc.* 120 F.3d 351, 359 (2d

25    Cir. 1997).)  Plaintiff must establish that the defendant is currently in violation of a "permit standard,

26    regulation, condition, requirement, prohibition, or order which has become effective pursuant to this

27    chapter."  (42 U.S.C. §6972(a)(l)(A); see also *Connecticut Coastal Fishermen's Ass'n v. Remington*

28

DEFENDANT WEST COAST METALS, INC.'S NOTICE OF MOTION AND MOTION    3:08-cv-01256-MMC
TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

1  *Arms Co.,* 989 F.2d 1305, 1315 (2d Cir. 1993) (dismissing claim under §6972(a)(1)(A) because the

2  "claim alleges a 'wholly past' RCRA violation").)

3      River Watch states that "DEFENDANTS' use and storage of scrap metal, automobile parts

4  and industrial metal waste at the site, as described in detail in the RCRA NOTICE, regularly violates

5  standards, regulations, conditions, requirements or prohibitions effective pursuant to the RCRA

6  regarding storage of halogenated organic compounds and other pollutants."  (Complaint, ¶7:3-6, p. 3.)

7  But the notice of intent to sue, incorporated into the Complaint and the prerequisite thereto, actually

8  delineates the activities that allegedly support the RCRA claims.  The notice does not describe any

9  activities related to current storage or handling of pollutants at the site.

10      Consequently, plaintiff has not alleged a violation of a permit or regulation, and the claims

11  under 42 U.S.C. §6972(a)(l)(A) should be dismissed.  (*ABB Industrial Systems, Inc. v. Prime*

12  *Technology Inc.,* 120 F.3d 351, 359 (2d Cir. 1997).)  The second cause of action fails to state a claim;

13  it cannot be premised on past conduct that allegedly violated RCRA §7002(a)(1)(A).

14      3.      Plaintiff's Third Cause of Action Fails to State A Claim Because Plaintiff Does Not

15          Allege that WCM is a Past or Present "Generator, Transporter, or Owner or Operator

16          of a Treatment, Storage or Disposal Facility."

17      Plaintiff's third cause of action asserts that WCM violated 42 U.S.C. §6972(a)(l)(B).  For

18  plaintiff to establish a 42 U.S.C. §6972(a)(1)(B) claim, plaintiff must allege: (1) WCM was a past or

19  present generator or transporter of solid or hazardous waste or past or present owner or operator of a

20  solid or hazardous waste treatment, storage or disposal facility; (2) WCM contributed to the handling,

21  storage, treatment, transportation, or disposal of solid or hazardous waste; and, (3) the solid or

22  hazardous waste in question may present an imminent and substantial endangerment to health or the

23  environment.  (42 U.S.C.§ 6972(a)(1)(B); *Dept. of Toxic Substances Control .v Interstate Non-*

24  *Ferrous Corp.,* 298 F.Supp.2d 930, 971 (ED. Cal. 2003) (citations omitted).)  River Watch fails to

25  meet these pleading requirements, and WCM is not a proper defendant as that term is defined in an

26  "imminent and substantial endangerment" suit under RCRA.

27      Plaintiff does not claim that WCM actively spilled hazardous chemicals or otherwise

28  contaminated the site.  (RCRA NOI, dated August 6, 2007, p. 2.)  Plaintiff does not claim that WCM

9

1  engaged in active human involvement with hazardous waste that poses an imminent and substantial

2  endangerment to health or the environment.  (42 U.S.C. § 6972(a)(l)(B); *Interfaith Community*

3  *Organization v. Honeywell International, Inc.,* 263 F.Supp.2d 796, 831 (D. New Jersey 2003).)

4  Although not applicable under plaintiff's allegations or the facts herein, even <u>indifference</u> in not

5  investigating or cleaning up a property after contamination is discovered <u>will not produce liability</u>

6  under RCRA §7002 (a)(1)(B).  (*First San Diego Properties v. Exxon,* 859 F.Supp. 1313

7  (S.D.CaI.1994).)

8          Plaintiff's third cause of action fails to state a claim against WCM.  It fails to allege any

9  WCM past or current "active conduct" connected to the hazardous waste that may cause imminent

10  and substantial endangerment.  Under the "facts" presented in the Notice and/or Complaint, the

11  RCRA claim cannot stand.

12                              IV. <u>CONCLUSION</u>

13          For all the reasons set forth above, WCM respectfully requests that the Court dismiss each

14  and every claim for relief contained in the plaintiff's complaint.

15

16  DATED:  June 23, 2008                    SPAULDING McCULLOUGH & TANSIL LLP
                                             Attorneys for Defendant
17                                           WEST COAST METALS, INC.

18

19                                           By:  _____/s/ Karin P. Beam_____
                                                  Karin P. Beam
20

21

22

23

24

25

26

27

28