1  Jack Silver, Esquire SBN# 160575
   Law Office of Jack Silver
2  Jerry Bernhaut, Esquire SBN# 206264
   Post Office Box 5469
3  Santa Rosa, California 95402-5469
   Telephone: (707) 528-8175
4  Facsimile:  (707) 528-8675
   lhm28843@sbcglobal.net
5
   Attorneys for Plaintiff
6  Northern California River Watch

7

8                  UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  NORTHERN CALIFORNIA RIVER          CASE NO: C08-01256 MMC
    WATCH, a non-profit Corporation,
12                                     **PLAINTIFF'S MEMORANDUM OF**
                   Plaintiff,          **POINTS AND AUTHORITIES IN**
13        v.                           **OPPOSITION TO DEFENDANTS'**
                                       **FRCP 12(b) MOTIONS TO DISMISS**
14  UNION PACIFIC RAILROAD
    COMPANY., WEST COAST METALS,       Date:       August 29, 2008
15  INC., and DOES 1-10, Inclusive,    Time:       9:00 a.m.
                                       Ctrm:       7
16                 Defendants.         Judge:      Hon. Maxine M. Chesney
    _____/
17

18

19

20

21

22

23

24

25

26

27

28

   C08-01256 MMC
   Plaintiff's Opposition to Defendants' FRCP 12(b) Motions

1

## TABLE OF CONTENTS

2  TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii-iv

3  I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4  II. FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5  III. LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

6       A.    STANDARDS FOR REVIEW UNDER FRCP 12(b) . . . . . . . . . . . . . . . . . . . . . 4

7             1.    Standards for Rule 12(b)(6) Motion to Dismiss for
                    Failure to State a Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
8
              2.    Standards for Rule 12(b)(1) Motion to Dismiss for
9                   Lack of Subject Matter Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

10      B.    RIVER WATCH'S CWA NOTICE MEETS ALL REQUIREMENTS OF
              THE CWA FOR ALLEGATIONS OF POINT SOURCE DISCHARGES . . . . . . 6
11
              1.    The CWA Notice Adequately Specifies a Point Source  . . . . . . . . . . . . . . . 7
12
              2.    The CWA Notice Provides Sufficient Information Regarding
13                  the Dates of Alleged Violations under the CWA and Case Law . . . . . . . . 10

14      C.    ALL OF RIVER WATCH'S CLAIMS FOR RELIEF ADEQUATELY
              ALLEGE COGNIZABLE CLAIMS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
15
              1.    River Watch's First Claim for Relief Adequately Alleges Discharge
16                  of a Pollutant from a Point Source to Waters of the United States
                    Without a NPDES Permit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
17
                    a.    River Watch's Allegations Distinguish Between Permitted and
18                        Non-permitted Discharges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

19                  b.    Under Current 9th Circuit Law the Site, the Plume and the
                          Equipment and Materials Which Originated the Pollution Are
20                        All Point Sources . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

21            2.    River Watch's Second Claim for Relief Adequately Alleges
                    Continuing Violations of RCRA § 7002(a)(1)(A),
22                  42 U.S.C. § 6972(a)(1)(A)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

23            3.    River Watch's Third Claim for Relief Adequately Alleges Violations
                    of RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B) . . . . . . . . . . . . . . . 19
24
     IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
25

26

27

28                                              - i -

1

**TABLE OF AUTHORITIES**

2

**STATUTES AND REGULATIONS**

3

CLEAN WATER ACT -  33 U.S.C. § 1251 *et seq.*
    § 1311(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,7
    § 1362(14)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,13
    § 1365(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

RESOURCE CONSERVATION AND RECOVERY ACT -  42 U.S.C. § 6901 *et seq.*
    § 6928(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    § 6928(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    § 6972(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,15,16,17,19
    § 6972(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,19,20

40 C.F.R. § 135.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,7
40 C.F.R. § 135.3(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,9
40 C.F.R. § 261.31 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

4

5

6

7

8

9

10

11

12

**CASES**

13

*Ascon Properties Inc. v. Mobil Oil Company*
866 F.2d 1149 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Association of Am. Med. Colleges v. United States*
217 F.3d 770 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Aurora Nat. Bank v. Tri Star Marketing, Inc.*
990 F. Supp. 1020 (N.D. Ill. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Borden Ranch v. United States Army Corps of Engineers*
261 F.3d  810 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*California Sport Fishing Protection Alliance v. City of West Sacramento*
905 F. Supp 792 (E.D. CA 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11

*Community Ass'n for Restoration of the Env't v. Henry Bosma Dairy*
305 F. 3d 943 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Cooper v. Bell*
628 F. 2d 1208  (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Conley  v. Gibson*
355 U.S. 41, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Connecticut Coastal Fishermen's Ass'n v. Remington Arms Co.*
989 F.2d 1303 (2nd Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- ii -

1    *Fallowfield Development Corp. v. Strunk*,
      1990 U.S. Dist. LEXIS 4820 (E.D. Pa. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
2
     *Fusco v. Xerox Corp.*
3     676 F. 2d  332 (8th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
4    *Gache v. Harrison*
      813 F. Supp. 1037 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
5
     *Gilligan v. Jamco Dev. Corp.*
6     108 F. 3d  246 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
7    *Gwaltney of Smithfield Ltd. v. Chesapeake Bay Found. Inc.*
      484 U.S. 49 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15,17
8
     *Hallstrom v. Tillamook County*
9    493 U.S.20 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
10   *Industrial Systems Inc. v. Prime Technology Inc.*
     120 F. 3d 351 (2nd Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
11
     *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*
12    399 F. 3d  248  (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
13   *Neitzke v. Williams*
      490 U.S. 319, 104 L. Ed. 2d 338, 109 S. Ct. 1827 (1989) . . . . . . . . . . . . . . . . . . . . . . 4
14
     *Northern California River Watch v. City of Healdsburg*
15   2004 U.S. Dist. LEXIS 1008 *32-33, *aff'd* 496 F.3d 993 (9th Cir. 2007),
     *cert. denied* 128 S. Ct. 1225 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
16
     *NRDC  v.  Southwest Marine Inc.*
17   236 F. 3d  985  (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,11,12
18   *PIRG of New Jersey, Inc. v Friends of the Earth*
      50 F. 3d  1239 (3rd Cir 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
19
     *Parks School of Business, Inc. v. Symington*
20   51 F. 3d 1480 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
21   *San Francisco BayKeeper v. Tosco Corporation et al*
      309 F. 3d  1153 (9th Cir 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,9,11
22
     *Scheuer v. Rhodes*
23    416 U.S. 232,  40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974) . . . . . . . . . . . . . . . . . . . . . . . . 4
24   *Southwest Center For Biological Diversity v. Bureau of Reclamation*
     143 F. 3d  515 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
25
     *Trustees for Alaska v. EPA*
26   749 F. 2d  549 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,14,15

27

28                                          - iii -

*United States v. Aceto Agric. Chem. Corp.*
 872 F. 2d 1373 (8th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Earth Sciences, Inc.*
 599 F. 2d  368 (10th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Usher v. City of Los Angeles*
 828 F. 2d  556  (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Washington Trout v. MacCain Foods, Inc.*
 45 F. 3d  1351  (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Washington Wilderness Coalition v. Hecla Mining Co.*
 870 F. Supp.  983 (E.D. Wash. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

-iv-

# I.  INTRODUCTION

Defendants Union Pacific Railroad ("UPR") and West Coast Metals ("WCM") (collectively, "Defendants") have filed separate but nearly identical Motions to dismiss under FRCP 12(b). Plaintiff Northern California River Watch ("River Watch") submits this opposition brief in response.

This action pertains to a former scrap metal, salvage and recycling facility located in Santa Rosa, California, ("the Site"), which has been the source of ongoing pollution of soil and groundwater for more than 20 years.  The pollution has migrated via groundwater to the Russian River and its tributaries, all jurisdictional waters of the United States.   River Watch served Defendants with a Notice of Violations and Intent To File Suit Under the Clean Water Act ("CWA"), 33 U.S.C. § 1365(a), CWA § 505(a) on August 6, 2007 ("CWA Notice") alleging violations of CWA § 301(a), 33 U.S.C. § 1311(a) for discharging pollutants from a point source to waters of the United States without a National Pollution Discharge Elimination System ("NPDES") Permit. (Court Doc. #1, Ex. A).  The CWA Notice detailed the activities which created the sources of the alleged pollution.

On August 6, 2007, River Watch also served Defendants with a Notice of Violations and Intent to File Suit Under the Resource Conservation and Recovery Act ("RCRA") 42 U.S.C. § 6901 et seq., (Court Doc. #1,  Ex. B) ("RCRA Notice") , alleging violations of RCRA standards and regulations regarding the storage and handling of pollutants, pursuant to 42 U.S.C. § 6972(a)(1)(A), and violations of 42 U.S.C. § 6972(a)(1)(B) by virtue of Defendants' operations at the Site having caused contamination of soil and groundwater which presents an imminent and substantial endangerment to human health and the environment

As alleged in River Watch's Notices the Site has been in continuous violation for more than 5 years.  It is indisputable that Defendants were aware of pollution at the Site as early as July, 11, 1988 when the first Cleanup and Abatement Order ("CAO") was issued by the Regional Water Quality Control Board ("RWQCB"). Also as stated in River Watch's Notices, the law mandates cleanup to background levels prior to contamination.  Had Defendants cleaned up the Site on a timely basis, the City of Santa Rosa's municipal well near the Site would not be

1   contaminated with TCE, 1,11-trichloroethane, freon 113. and 1,1-dichloroethene" (Court Doc.

2   #1, Ex. A, pg.3).  Given the persistence of toxic levels of hazardous waste within the effective

3   range of numerous domestic wells for decades, it is clear Defendants need additional incentives

4   to comply with the law.

5          River Watch filed its Complaint (Court Doc. #1) on March 4, 2008 alleging violations as

6   detailed in the Notice letters.  Defendants have filed the current Motions to dismiss under FRCP

7   12(b) based upon:

8          1.      Whether River Watch's CWA Notice letter complies with the citizen suit

9                  notice requirements of the CWA with regard to the required specificity under

10                 40 C.F.R § 135.3.

11         2.      Whether River Watch plead sufficient facts to state a claim for relief under the

12                 CWA.

13         3.      Whether River Watch plead sufficient facts to state a claim for relief under the

14                 RCRA.

15         The Court should deny Defendants' Motions to dismiss in their entirety as Defendants mis-

16  read the law and seek to litigate facts prior to the commencement of discovery.  At this stage of

17  litigation River Watch needs only to adequately allege violations of the CWA or RCRA.  A

18  reading of the Complaint will prove that River Watch's Notice letters comply completely with

19  the requirements of 40 C.F.R § 135.3 and its Complaint states a claims for which relief can be

20  granted.

21                              **II.  FACTUAL BACKGROUND**

22         Orders issued to Defendants by the RWQCB detail decades during which Defendants have

23  allowed materials containing hazardous levels of toxic wastes to be stored at the Site in a

24  haphazard manner without proper containment and pollution prevention measures. Hazardous

25  pollutants have leached into soil and groundwater beneath and adjacent to the Site and continue

26  to migrate to nearby surface waters and to groundwater supplying domestic wells in the area.

27         UPR currently owns the Site which is located  at 99 Frances Street, Santa Rosa, California

28  (Assessor's Parcel No. 37-012-1).   In June of 1979, UPR's predecessor in interest leased the

1   Site to WCM. WCM used the Site for metal salvage recycling operations including the purchase

2   of metal waste material from industrial businesses and sorting, condensing, and resale of the

3   metal scrap.  A hydraulic press was used to flatten automobiles. Aerial photographs of the Site

4   taken during the time of WCM's lease show the former disassembly building, the tractor trailer

5   beds for storage of metals, large cylindrical storage containers, and numerous stockpiles of

6   miscellaneous parts, tanks, cars and other debris scattered over the entire Site.  In 1986, the lease

7   was terminated and WCM abandoned its operations.

8        The RWQCB  issued numerous CAOs with regard to the Site as early as 1988.  The most

9   recent CAO No. R1-2006-0017 was issued in February of 2006.  (Decl. of J. Bernhaut, Ex. A).

10  Despite 20 years of "regulation" the pollutants at this Site continue to migrate contaminating

11  aquifers, groundwater, wells, etc.

12       Based on information contained in the record assembled by the RWQCB including

13  evidence of past discharges at the Site and current ownership and control, UPR and WCM are

14  identified by the RWQCB as the responsible parties charged with the clean up of the Site.

15       Results of on-going monitoring and site investigation confirmed the presence of

16  halogenated organic compounds in groundwater extending approximately one-half mile to the

17  west of the Site. Chemicals found in groundwater in the area investigated include

18  trichloroethylene (TCE) at up to 23,000 parts per billion (ppb), 1,l.l-trichloroethane at up to

19  5,800 ppb, freon 113 at up to 19,000 ppb, benzene at up to 18 ppb and other related volatile

20  organic compounds.   Other compounds previously detected in groundwater include heavy

21  metals and fuel constituents.  All of these pollutants are thousands of times higher than the

22  Maximum Contamination Levels and Water Quality Objectives allowed under the law.

23       Extensive domestic well sampling has revealed volatile organic compound contamination

24  in 33 residential wells such as TCE at up to 150 ppb.  The Site is located within 1,000 feet of a

25  large City of Santa Rosa municipal well which was found to be contaminated with TCE, 1,11-

26  trichloroethane, freon 113. and 1,1-dichloroethene.

27

28

# III.  LEGAL ARGUMENT

## A.    STANDARDS FOR REVIEW UNDER FRCP 12(b)

### 1.    Standards for Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

Defendants have filed Motions to Dismiss River Watch's Complaint under the provisions of FRCP 12(b)(6) for the alleged failure of River Watch to state a claim for which relief by the Court might be granted.

*Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 102, 2 L. Ed.2d 80 (1957) sets forth the general rubric under which complaints may be tested by motions to dismiss:

> In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

At this stage of the litigation, allegations alone will suffice.  The court must take the non-moving party's allegations as true and construe those allegations in the light most favorable to the non-moving party. *Parks School of Business, Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995).  The court must also draw all reasonable inferences in favor of the non-moving party. *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir. 1987).  And, when the non-moving party has attached exhibits to the complaint, those exhibits may be considered by the Court without converting the motion to one for summary judgment.  *Cooper v. Bell*, 628 F.2d 1208, 1210, n.2 (9th Cir. 1980).

The issue is not whether a plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence in support of the plaintiff's claims.  *Scheuer v. Rhodes*, 416 U.S. 232, 236; 40 L. Ed. 2d 90; 94 S. Ct. 1683 (1974); *United States v. Aceto Agric. Chem. Corp.*, 872 F.2d 1373, 1376 (8th Cir. 1989).  "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46. The Rule does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations. *Neitzke v. Williams*, 490 U.S. 319, 327, 104 L. Ed. 2d 338, 109 S. Ct. 1827 (1989).  It is only in the "unusual case" where the complaint on its face reveals some insuperable bar to relief that a

1   dismissal under Rule 12(b)(6) is warranted.  *Fusco v. Xerox Corp*., 676 F.2d 332, 334 (8th Cir.

2   1982).

3       A Rule 12(b)(6) motion to dismiss for failure to state a claim is viewed with disfavor and

4   is rarely granted. See *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997).

5       In the instant case Defendants claim River Watch failed to state a claim under either the

6   CWA or RCRA.  Instead of arguing the pleadings, Defendants attempt to argue the facts.  This

7   failure in the substance of Defendants' Motions to dismiss is fatal.  Without establishing that

8   River Watch failed to adequately plead its requests for relief, Defendants cannot establish a basis

9   for dismissal under FRCP 12(b)(6).

10      **2.    Standards for Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction**

11

12      Pursuant to Rule 12(b)(1), a district court must dismiss an action if it lacks jurisdiction over

13  the subject matter of the suit.   In order to prevail the party moving under Rule 12(b)(1) must

14  submit evidence indicating that the court lacks subject matter jurisdiction. Once the moving party

15  has submitted evidence supporting its motion it " then becomes necessary for the party opposing

16  the motion to present affidavits or any other evidence necessary to satisfy its burden of

17  establishing that the court, in fact, possesses subject matter jurisdiction." *Association of Am.*

18  *Med. Colleges v. United States*, 217 F.3d 770, 778 (9th Cir. 2000) (noting that a district court

19  "obviously does not abuse its discretion by looking to this extra-pleading material in deciding

20  the issue, even if it becomes necessary to resolve factual disputes").

21      Defendants claim that River Watch's CWA Notice and RCRA Notice are defective in that

22  they lack the specificity required under the law.   Specifically with regard to River Watch's

23  CWA Notice, Defendants claim River Watch failed to describe with particularity the violation

24  and the dates of violation.  Neither of these claims have merit.  Defendants pretend that the

25  Notices and the Complaint are the only information known to them concerning this Site, despite

26  the numerous RWQCB orders issued to them as well as Defendants' intimate knowledge of

27  avoiding clean-up and remediation of the Site for the past 20 years.

28

1   **B.    RIVER WATCH'S CWA NOTICE MEETS ALL REQUIREMENTS OF THE CWA**
        **FOR ALLEGATIONS OF POINT SOURCE DISCHARGES**

2

3       UPR[1] claims River Watch's CWA Notice fails to meet the requirements of 40 C.F.R §

4   135.3(a)[2], in that the CWA Notice fails to provide "reasonably specific information regarding

5   the point source and the date of the alleged violations." (Court Doc. #9 - UPR Memorandum,

6   pg. 8, lns. 17-18).  Defendants claim that the Supreme Court and the Ninth Circuit require strict

7   compliance with notice requirements.   In support of this contention, Defendants cite *Hallstrom*

8   *v. Tillamook County*, 493 U.S.20, 31-33 (1989), in which the court dismissed a citizen suit

9   because plaintiff had failed to notify the state and the EPA, as required by the notice provisions;

10  *Washington Trout v. MacCain Foods, Inc,* 45 F.3d 1351, 1354 (9th Cir. 1995) in which the court

11  dismissed a citizen suit because two named plaintiffs were not listed in the notice; and,

12  *Southwest Center For Biological Diversity v. Bureau of Reclamation,* 143 F.3d 515, 520 (9th Cir.

13  1998), in which a citizen suit was dismissed because the notice failed to identify in any manner

14  one of the violations named in the complaint. (Court Doc. #22 - WCM Memorandum , pg.5, lns.

15  13-24); (Court Doc. #9 - UPR Memorandum, pg. 9, lns. 13-23).   In each of the above-cited

16  cases a very specific procedural  requirement of the notice provision was omitted and the courts

17  strictly construed the notice requirement to find a lack of subject matter jurisdiction.

18      In discussing whether a citizen suit notice contains sufficient information to permit a

19  recipient to identify the subject activity, location and dates of alleged violations, the Ninth

20  Circuit has developed a pragmatic standard, "in practical terms, the notice must be sufficiently

21  specific to inform the alleged violator about what it is doing wrong, so that it will know what

22  corrective actions would avert a lawsuit", *NRDC  v.  Southwest Marine Inc.* 236 F.3d 985, 996

23  (9th Cir. 2000).

24          [1] River Watch has dismissed WCM from the First Claim For Relief and thus need not address
    its argument regarding that specific claim.

25          [2] 40 C.F.R § 135.3(a) Violation of standard, limitation or order. Notice regarding an alleged

26  violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient
    information to permit the recipient to identify the specific standard, limitation, or order alleged to have

27  been violated, the activity alleged to constitute a violation, the person or persons responsible for the
    alleged violation, the location of the alleged violation, the date or dates of such violation, and the full

28  name, address, and telephone number of the person giving notice.

1    In two Ninth Circuit cases, *Community Ass'n for Restoration of the Env't v. Henry Bosma*

2    *Dairy*, 305 F. 3d 943 (9th Cir. 2002) (hereafter, "*CARE*") and *San Francisco BayKeeper v. Tosco*

3    *Corporation, et al*. 309 F. 3d 1153 (9th Cir 2002) (hereafter, "*Tosco*"),  the Ninth Circuit has

4    given guidance and clarity as to the requirements of what constitutes sufficient information to

5    permit the recipient to identify:  the activity alleged to constitute a violation, and  the date or

6    dates of such violation.  The "key language in the notice regulation is the phrase 'sufficient

7    information to permit the recipient to identify' the alleged violations and bring itself into

8    compliance." *CARE*  305 F. 3d at 951. The regulation does not require a plaintiff to "list every

9    specific aspect or detail of every alleged violation." *ibid*.  "In short, the Clean Water Act's notice

10    provisions and their enforcing regulations require no more than 'reasonable specificity'*." Tosco*

11    309 F. 3d at 1158.

12    **1.    The CWA Notice Adequately Specifies a Point Source**

13    CWA § 301(a), 33 U.S.C. § 1311(a) prohibits discharging pollutants from a point source

14    to waters of the United States without a NPDES Permit.  Defendants claim River Watch's CWA

15    Notice fails to specify a point source. Citing the definition of a point source in 33 U.S.C. §

16    1362(14)[3], Defendants argue that River Watch's CWA Notice was required to reference ditches,

17    culverts, canals or similar geographic features which "could arguably be 'a discernable, confined

18    or discrete conveyance.'" (Court Doc. #9  - UPR Memorandum, pg. 10-11, lns. 20-3; Court Doc.

19    #22 - WCM Memorandum, pg.6, lns. 18-23)

20    For purposes of meeting the requirements of 40 C.F.R. §135.3, the issue is not what

21    constitutes a point source under the CWA but whether River Watch included "sufficient

22    information to permit the recipient to identify the specific standard, limitation, or order alleged

23    to have been violated, the activity alleged to constitute a violation, the person or persons

24    responsible for the alleged violation, [and] the location of the alleged violation[.]"

25

26    _____

   [3] The term "point source" means any discernible, confined and discrete conveyance, including
27    but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock,
   concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may
28    be discharged. This term does not include agricultural stormwater discharges and return flows from
   irrigated agriculture. 33 U.S.C. § 1362(14)

River Watch's CWA Notice references numerous CAOs issued by the RWQCB which describe discharges due to Defendants' activities at the Site causing a plume of pollution which is polluting groundwater and likely, waters of the United States.

In CAO No. R1-2006-0017 the RWQCB states:

5. Based on information contained in the record assembled by the Regional Water Board including evidence of past discharges at the Site, and current ownership and control; Union Pacific Railroad Company, West Coast Welders Supply, and West Coast Metals, Inc., are collectively referred to as the Dischargers.

7. A total of thirty-nine monitoring wells, fourteen groundwater extraction wells, and eleven piezometers have been installed on and off-site. Thirty-seven of the thirty-nine wells remain in place. Groundwater monitoring activities have been conducted under Revised Monitoring and Reporting Order No. 94-43, issued on July 3, 2001. Results of on-going monitoring and site investigation confirmed the presence of halogenated organic compounds in groundwater extending approximately one-half mile to the west of the site. Chemicals found in groundwater in the area investigated include trichloroethylene (TCE) at up to 23,000 parts per billion (ppb), 1,1,1 -trichloroethane at up to 5,800 ppb, freon 113 at up to 19,000 ppb, benzene at up to 18 ppb and other related volatile organic compounds (VOCs). Other compounds previously detected in groundwater include heavy metals and fuel constituents.

11. The Dischargers have caused or permitted, cause or permit, or threaten to cause or permit waste to be discharged or deposited where it is, or probably will be, discharged into the waters of the state and creates, or threatens to create, a condition of pollution or nuisance. Continuing discharges are in violation of the Porter-Cologne Water Quality Control Act and provisions of the Water Quality Control Plan for the North Coast Region (Basin Plan).

12. Beneficial uses of areal groundwater include domestic, irrigation, and industrial supply. Beneficial uses of Santa Rosa Creek, a tributary to the Laguna de Santa Rosa and the Russian River are: a. municipal and domestic supply; b. agricultural supply; c. industrial process supply; d. groundwater recharge; e. navigation; f. hydropower generation; g. water contact recreation; h. non-contact water recreation; I. commercial and sport fishing; j. warm freshwater habitat; k. cold freshwater habitat; 1. wildlife habitat; m. migration of aquatic organisms; n. spawning, reproduction, and/or early development. (Decl. of J. Bernhaut, Ex. A, pg. 2-3)

River Watch CWA Notice states:

A hydraulic press was used to flatten automobiles. Aerial photographs of the Site, taken during the time of West Coast Metals. Inc's. lease, show the former disassembly building, the tractor trailer beds for storage of metals, large cylindrical storage containers, and numerous stockpiles of miscellaneous parts, tanks, cars and other debris scattered over the entire Site. (Court Doc. #1, Ex. A, pg. 2-3)

The site is in the vicinity of Santa Rosa Creek, a tributary of the Russian River. Pollutants discharged from the site migrate through ground water tributaries into Santa Rosa Creek and the Russian River, both waters of the U.S. (Court Doc. #1, Ex. A, pg. 3)

[P]olluters have violated the Clean Water Act . . .for discharging pollutants into waters of the United States without an NPDES permit. Polluters have also caused waste to be discharged or deposited where it is, or probably will be, discharged into the waters of the State of California and the United States, and creates a condition of pollution or nuisance. Continuing discharges as identified herein are in violation of the Clean Water Act, the Porter-Cologne Water Quality Control Act and provisions of the Water Quality Control Plan for the North Coast Region ("Basin Plan"). (Court Doc. #1, Ex. A, pg. 5)

Given the fact that more than 20 years has passed since the time the first enforcement action against Defendants was issued, we can assume Defendants are aware of the intimate details of their operations which gave rise to the violations of the CWA complained of in this action.

The CWA Notice references the past regulatory history and specifically states the concerns of River Watch regarding the discharge of pollutants from the Site to waters of the United States.

With regard to the requirements of 40 C.F.R §135.3(a), River Watch's CWA Notice is adequate in that it identifies the specific activity giving rise to the request for relief. Clearly River Watch's CWA Notice is "sufficiently specific to inform [Defendants] about what it is doing wrong." and is also specific enough to give Defendants an "opportunity to correct the problem." (See *Tosco* supra at 1159)[4]

---

[4]"The closer question is whether BayKeeper can pursue its claim that Tosco was responsible for
(continued...)

## 2.    The CWA Notice Provides Sufficient Information Regarding the Dates of Alleged Violations under the CWA and Case Law

Defendants contend that River Watch's identification of a 5 year range of continuous violations does not provide "reasonably specific" information as required by the CWA. (Court Doc. #9 - UPR Memorandum,  pg.11, lns. 9-28; Court Doc. #22 - WCM Memorandum, pg.7, lns 1-16).  Defendants cite *California Sport Fishing Protection Alliance v. City of West Sacramento,* 905 F. Supp 792 (E.D. CA 1995) as a case in which the court found that a "similarly worded" notice provided insufficient notice of the date or dates of alleged violations. The pertinent language in the plaintiff's notice letter in *California Sport Fishing* is "For the previous five years on hundreds of occasions you have violated your NPDES permit " (Court Doc. #9 - UPR Memorandum, pg.11, lns 17-21; Court Doc. #22 - WCM Memorandum, pg..7, lns. 6-16). Defendants overlook a critical difference in the nature of the allegations in the *California Sport Fishing* Notice and River Watch's CWA Notice. The allegations in the *California Sport Fishing* Notice were for specific effluent limit violations of a defendant's NPDES Permit which allegedly occurred on individual days.  The allegations in River Watch's CWA Notice are for continuous violations which allegedly occurred daily: "Pollutants discharged from the Site migrate through ground water tributaries into Santa Rosa Creek and the Russian River, both waters of the United States." (Court Doc. #1, Ex. A, pg. 3)

> As described in the BACKGROUND section of this NOTICE, this Site has been in continuous violation from 1970 to the present. However, this NOTICE covers only the statutory period of limitations to date running from July 31, 2002 through July 31, 2007.  River Watch will from time to time update and supplement this NOTICE to include all violations which occur after the date of this NOTICE.  The majority of Polluters' violations set forth herein, such as

---

[4](...continued)
illegal discharges "on each day when the wind has been sufficiently strong to blow coke from the piles into the slough." BayKeeper did not provide any specific dates other than the general date range covered by its notice letter. BayKeeper's notice did, however, clearly identify the alleged violation - namely, that during the time when the coke piles remained uncovered, wind blew coke into the slough. BayKeeper's notice was "sufficiently specific to inform [Tosco] about what it is doing wrong." *Southwest Marine, 236 F.3d at 996.* It was also specific enough to give Tosco an "opportunity to correct the problem," *Bosma Dairy*, slip op. at 14016, by enclosing or covering the coke piles. We hold, therefore, that BayKeeper's notice with respect to wind-related discharges was sufficient, and that BayKeeper can pursue those claims at trial." *Tosco* 309 F. 3d  at 1149

1
2
3
4
5
6

discharging pollutants to waters of the United States without a NPDES permit,
failure to obtain a NPDES permit, failure to implement the requirements of the
Clean Water Act, failure to meet water quality objectives, etc., are continuous,
and therefore each day is a violation.  River Watch believe all violations set forth
in this NOTICE are continuing in nature or will likely continue after the filing of
a lawsuit.   Specific dates of violations are evidenced in Polluters' own records
(or lack thereof) or files and records of other agencies including the RWQCB,
City of Santa Rosa, County Health and local police and fire departments.
(Court Doc. #1, Ex. A, pg. 5)

7
8
9
10
11

The plaintiffs in *California Sport Fishing* failed to specify any identifiable range of dates. The court found the reference to the previous five years to be vague without any definitive period, whereas River Watch's CWA Notice specifies  a time frame from  July 31, 2002 to July 31, 2007.

12
13

The Ninth Circuit has determined when deficiencies are ongoing, no specific date need be alleged.

14
15
16

Where BayKeeper alleged an ongoing violation of Tosco's obligation to
implement best available technology to prevent storm water pollution, no specific
dates were needed. See *Southwest Marine,* 236 F.3d 996.
(*Tosco* at 1153,1158)

17
18
19
20
21
22
23
24

Although the letter did not identify a specific date, or a specific location within
Southwest Marine's facility, it nevertheless satisfied those requirements as well.
*See id.* Plaintiffs were not alleging that a particular discharge from a particular
pipe on a particular day had violated the CWA. Rather, they were alleging that
Defendant had failed to prepare and implement plans that were required by its
permit. As the district court correctly noted, the failure to develop and implement
pollution prevention plans are violations "occurring at the facility in general."
*Southwest Marine, 945 F. Supp. at 1333*. Moreover, "the deficiencies in these
plans are ongoing, so there is no specific date that can be alleged as the date of
the violation."
(*Southwest Marine,* 236 F.3d 996)

25
26
27
28

*California Sport Fishing,* a district court case, was decided before *Tosco* and *Southwest Marine*. Here, River Watch is alleging ongoing violations "occurring at the facility in general."*ibid.*   River Watch's CWA Notice clearly identifies a specific time period during which pollutants continuously seeped from the Site to underlying ground water and migrated

subsurface to adjacent surface waters.   As the court noted in *Southwest Marine*, where the alleged violations are ongoing, "there is no specific date that can be alleged." *ibid*. River Watch's CWA Notice adequately specified the dates of alleged violations under controlling Ninth Circuit case law.

The Ninth Circuit has consistently held the CWA regulation only requires a plaintiff to provide enough information to permit the recipient to identify the dates of the violations; the regulation does not require the notice itself to contain the relevant dates. *See also PIRG of New Jersey, Inc. v Friends of the Earth* 50 F.3d 1239 at 1247 (3rd Cir 1995) ("While there is no doubt that such detailed information is helpful to the recipient of a notice letter in identifying the basis for the citizen suit, such specificity is not mandated by the regulation.").

**C.    ALL OF RIVER WATCH'S CLAIMS FOR RELIEF ADEQUATELY ALLEGE COGNIZABLE CLAIMS**

    **1.    River Watch's First Claim for Relief Adequately Alleges Discharge of a Pollutant from a Point Source to Waters of the United States Without a NPDES Permit**

In its First Claim For Relief River Watch alleges violation of CWA § 301(a) on the part of UPR for discharging a pollutant from a point source to a water of the United States without a NPDES permit.[5]  (Court Doc. #1, ¶38 ).  UPR claims this First Claim For Relief fails to state a claim for two reasons: 1) UPR has a NPDES permit for discharging the remediated ground water; and (2) River Watch fails to allege with particularity the points source other than the Site or plume.

    **a.    River Watch's Allegations Distinguish Between Permitted and Non-permitted Discharges**

River Watch's Complaint acknowledges the NPDES Permit under which UPR is permitted a specifically limited discharge of polluted ground water which has been extracted and treated.   The Complaint then distinguishes this permitted discharge from the alleged ongoing discharge of polluted ground water via underground migration to Santa Rosa Creek,

---

[5]
 River Watch has dismissed its First Claim for Relief as against defendant WCM..

1
2
3
4
5
6

> DEFENDANTS are covered under General Waste Discharge Requirements Order No. R1-2006-0048,issued by the Regional Water Quality Control Board, to discharge treated groundwater from a groundwater extraction and treatment system located on the Site to an unnamed tributary at the northern portion of the Site which flows to Steele Creek, tributary to Piner Creek and thence to Santa Rosa Creek. DEFENDANTS have no NPDES Permit for the ongoing discharge of untreated, polluted groundwater migrating though soil and groundwater to Santa Rosa Creek, a water of the United States .(Court Doc #1, ¶29)

7
8

River Watch adequately alleges the ongoing unpermitted discharge of untreated polluted water remaining underground and migrating to nearby surface waters.

9
10
11

> **b.    Under Current 9th Circuit Law the Site, the Plume and the Equipment and Materials Which Originated the Pollution Are All Point Source**

12
13
14
15
16
17
18
19
20

UPR claims that River Watch fails to adequately specify a point source both in the Complaint and in the CWA Notice. UPR's only argument is that other than the Site or plume, River Watch has failed to identify a point source. "River Watch's statement that the 'site is the point source' is vague and fails to meet even the most liberal understanding of a 'discernable, confined, or discrete conveyance'." (Court Doc. #9 - UPR Memorandum, pg. 12, lns. 20-22). As described above in section B1, River Watch identifies multiple point sources in addition to the Site and the plume. UPR's reading of the term "point source" is constrained and inconsistent with current case law.

21
22
23
24
25

> The term "point source" means **any** discernible, confined and discrete conveyance, **including but not limited to** any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged. This term does not include agricultural stormwater discharges and return flows from irrigated agriculture. (Emphasis added)
> (33 U.S.C. § 1362(14))

26
27
28

"Courts have determined that the term 'point source' should be construed broadly to effectuate the remedial purposes of the CWA." *United States v. Earth Sciences, Inc.,* 599 F.2d 368, 373 (10th Cir. 1979) (cited with approval in *Trustees for Alaska v. EPA,* 749 F.2d 549, 558

1   (9th Cir. 1984)); *Washington Wilderness Coalition v. Hecla Mining Co.,* 870 F. Supp. 983, 988

2   (E.D. Wash. 1994) "The touchstone for finding a point source is the ability **to identify a**

3   **discrete facility** from which pollutants have escaped.") (Emphasis added); *Northern California*

4   *River Watch v. City of Healdsburg* 2004 U.S. Dist. LEXIS 1008 *32-33, *aff'd* 496 F.3d 993 (9th

5   Cir. 2007), *cert. denied* 128 S. Ct. 1225 (2008) . ("The term 'point source' has been taken

6   beyond pipes and ditches and now includes less discrete conveyances, such as cesspools and

7   ponds.")

8        The *Healdsburg* court found that a 58 acre pond, in its entirety, qualified as a point

9   source under the CWA.  An analogous holding was made in *Hecla Mining* concerning a 38 acre

10  facility,

> These cases make clear that **the touchstone for finding a point source is the**
> **ability to identify a discrete facility from which pollutants have escaped**.
> Particularly persuasive is the reasoning of the Earth Sciences court, adopted by
> the Ninth Circuit in *Trustees for Alaska. 599 F.2d at 370*. There, the court noted
> that "point source" must be interpreted broadly to effectuate the remedial
> purposes of the *CWA. 599 F.2d at 373*. The non-point source designation  is
> limited to uncollected runoff water from, for example, oil and gasoline on a
> highway, which is difficult to ascribe to a single polluter.  *Trustees for Alaska,*
> *749 F.2d at 558*. Discharges from a pond or refuse pile can easily be traced to
> their source. Thus, even though runoff may be caused by rainfall or snow melt
> percolating through a pond or refuse pile, the discharge is from a point source
> because the pond or pile acts to collect and channel contaminated water. *599 F.2d*
> *at 374*. (Emphasis added)
> (*Hecla Mining*  870 F. Supp. at 988)

21       Here Defendants' Site is one urban lot, much smaller than the 58 acre pond found to be

22  a point source by the *Healdsburg* court or the 38 acre facility held to be a point source by the

23  court in *Hecla Mining.*

24       The plume can also be seen as a point source as can the various sources of that plume.

25  UPR is in essence arguing that discharging from a pipe to a water of the United States would

26  violate the CWA, but, if UPR discharges to the ground and that pollution makes its way to a

27  water of the United States, then that would not be a violation of the CWA.  There is no case

28  UPR can point to supporting such a loophole that would swallow the entire CWA.

In *Borden Ranch v. United States Army Corps of Engineers*, 261 F.3d 810 (9th Cir. 2001) a farmer was charged with discharging a pollutant from a point source to a waters of the United States without a NPDES permit.  The point source was the equipment used by the farmer to deep rip a wetlands in preparation of planting.  The deep ripping caused soil to be discharged into jurisdictional waters.

In this case in addition to the Site, the plume and various other point sources such as the hydraulic press, discharged pollutants where they have migrated and continue to migrate to surface waters.  As noted by the court in *Trustees for Alaska*, discharges from such a site can and have been easily traced.  *id.* 749 F.2d at 558.

**2.     River Watch's Second Claim for Relief Adequately Alleges Continuing Violations of RCRA § 7002(a)(1)(A), 42 U.S.C.§ 6972(a)(1)(A)**

Defendants contend that River Watch's Second Claim For Relief alleging violations of 42 U.S.C. § 6972 fails because River Watch's Complaint alleges only past activities resulting in illegal discharges, whereas a claim under 42 U.S.C.§ 6972(a)(1)(A) must allege continuing violation of RCRA requirements.[6]  RCRA § 7002(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A)  states:

> Except as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf — against any person (including (a) the United States, and (b) any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution) who is *alleged* to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this Act.

In interpreting similar language under the CWA the Supreme Court, in *Gwaltney of Smithfield Ltd. v. Chesapeake Bay Found. Inc.*, 484 U.S. 49 (1987) held that a good faith allegation of continuous or intermittent violations states a cognizable claim.

Petitioner argues that citizen-plaintiffs must prove their allegations of ongoing noncompliance before jurisdiction attaches under § 505.  Brief for Petitioner 37-

---

[6] Defendants make a similar claim: "it alleges ,at best, an historic RCRA violation" (Court Doc. #22 - WCM Memorandum, p.8, lns. 10-11); "it alleges at best a wholly past RCRA violation" (Court Doc. # 9 - UPR Memorandum, pg.12, lns. 25-27)

43.   We cannot agree.   The statute does not require that a defendant "be in violation" of the Act at the commencement of suit; rather, the statute requires that a defendant be "*alleged* to be in violation." Regarding the same language at issue in the RCRA §7002 (a)(1)(A) citizen suit provision, "alleged to be in violation. (*id.* 484 U.S. 49 at 64)

River Watch's RCRA Notice states:

1.      Permits, Standards and Regulations - 42 U.S.C. § 6972(a)(1)(A)

Halogenated organic compounds have been characterized as "hazardous waste" and "solid waste" within the meaning of RCRA provisions, 40 CFR § 261.31. Accordingly, all regulatory mandates applicable to hazardous or solid waste apply to the use, storage and disposal of halogenated organic compounds.

Between approximately July 31, 2002 and July 31, 2007, Polluters have caused halogenated organic compounds and other hazardous waste to be discharged or deposited where it is, or probably will be, discharged into waters of the State and now creates, or threatens to create, conditions of pollution or nuisance. The discharges and threatened discharges of such petroleum waste are deleterious to the beneficial uses of water, and are creating and threaten to create various conditions of pollution and nuisance which will continue unless the discharges and threatened discharges are permanently abated. Polluters have no permit for the storage, treatment or disposal of hazardous waste on the Site. (Court Doc. #1, Ex. B - pg.6-7)

River Watch's Complaint alleges:

42.      RCRA Section 7002(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A) permits an action against any person who violates a PERMIT, STANDARD or REGULATION pursuant to the RCRA.   Civil penalties may be assessed against any person or entity in violation of this section, under the provisions of the RCRA, 42 U.S.C. §§ 6928 (a) and (g).

43.      DEFENDANTS' storage and disposal of materials containing toxic levels of halogenated organic compounds and volatile organic compounds, defined as hazardous wastes under the RCRA, at the Site has caused the discharge of hazardous wastes to soil and groundwater in violation of regulations regarding the use and disposal of hazardous wastes. (RCRA Section 3004 (d),    42 U.S.C. §6924(d)).

44.    PLAINTIFF avers and believes and on such belief alleges that without the imposition of appropriate civil penalties and the issuance of appropriate equitable relief, DEFENDANTS will continue to violate a PERMIT, STANDARD or REGULATION pursuant to RCRA, specifically RCRA Section 3004 (d),  42 U.S.C. §6924(d).

45.    PLAINTIFF avers and believes and on such belief alleges that continuing violations of the RCRA by DEFENDANTS at the Site will irreparably harm PLAINTIFF and its members, for which harm PLAINTIFF and its members have no plain, speedy or adequate remedy at law. (Court Doc. #1, Ex B, pg 10)

Therefore, River Watch has alleged current and continuing violations of RCRA § 7002(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A).   At this stage of the litigation, prior to the commencement of any discovery, nothing more is required.  River Watch has met the statutory requirements of "good-faith" allegations.

Disregarding *Gwaltney* and the standards for Rule 12(b)(6) motions, Defendants cite three cases which are inapplicable at this stage of the litigation and otherwise easily distinguishable.  In *Ascon Properties Inc. v. Mobil Oil Company*, 866 F.2d 1149, 1159 (9th Cir. 1989) the court held that because the illegal discharges ended 4 years prior to the adoption of the RCRA, there was no initial violation and therefore no continuing violation. The RCRA was passed in 1976, well before the violations complained of in this case. Thus, *Ascon* is inapplicable.  In *Industrial Systems Inc. v. Prime Technology Inc.* 120 F. 3d 351, 359 (2nd Cir. 1997) the court found no evidence of spilled chemicals, thus no evidence of an initial violation. In this case Defendants have admitted to discharging pollutants into the soil and ground water as evidenced by the numerous unchallenged CAOs.[7]   In *Connecticut Coastal Fishermen's Ass'n v. Remington Arms Co.,* 989 F.2d 1303 (2nd Cir. 1993),  the plaintiff sued Remington Arms Co. for failing to remove lead shot from a water of the United States in its firing range. Plaintiff Connecticut Coastal Fishermen's Association alleged violations of both the CWA and

---

[7] Defendants have 30 days to administratively challenge enforcement orders. There is no evidence in the RWQCB files that either UPR or WCM have ever challenged any of the numerous CAOs.

RCRA. The court dismissed the plaintiff's RCRA § 7002(a)(1)(A), 42 U.S.C. 6972(a)(1)(A), claim simply because plaintiff failed to plead a violation of that section of RCRA. "Coastal Fishermen therefore failed to state a valid claim that Remington owns or operates a hazardous waste storage facility or that it violated § 7002(a)(1)(A)." *id.* 989 F.2d at 1315. In its RCRA Notice made part of its Complaint, and in its Complaint, River Watch has clearly alleged violations of RCRA § 7002(a)(1)(A).

Under Defendants' interpretation of the law a person could discharge pollutants into ground water without violating the RCRA as long as the discharging stops the day before a lawsuit is filed. Defendants can point to no case which supports such a broad exception to the RCRA's cradle to grave mandate. In *Gache v. Harrison*, 813 F. Supp. 1037, 1041 (S.D.N.Y. 1993), the court recognized that the RCRA's cradle to grave mandate requires hazardous waste be cleaned up; and, as long as the contamination remains, there exists a continuing violation of the Act,

> Defendants focus on the act of dumping in assessing whether a continuing violation of RCRA exists. The Town argues that all dumping activities ceased in 1989 and have not been resumed since. We reject this contention as an overly narrow view of the violation that occurred. The continued presence of illegally dumped materials on plaintiff's property could constitute a continuing violation of RCRA. The environmental harms do not stem from the act of dumping when waste materials slide off the dump truck but rather after they land and begin to seep into the ground, contaminating soil and water. So long as wastes remain in the landfill threatening to leach into the surrounding soil and water, a continuing violation surely may exist.

Similarly in *Fallowfield Development Corp. v. Strunk*, 1990 U.S. Dist. LEXIS 4820, *32-33 (E.D. Pa. 1990), the court recognized that the defendant's contention regarding the need for current activities of disposal to maintain an action under the RCRA would create a loophole large enough to swallow the Act,

> If a person disposes of hazardous waste on a parcel of property, the hazardous waste remains in that property insidiously infecting the soil and groundwater aquifers. In other words, the violation continues until the proper disposal procedures are put into effect or the hazardous waste is cleaned up . . . To allow

a citizen suit only in situations where the owner or operator of a hazardous waste facility is disposing of hazardous waste on a daily basis would virtually read section 7002 out of RCRA.

In *Aurora Nat. Bank v. Tri Star Marketing, Inc.*, 990 F. Supp. 1020, 1025 (N.D. Ill. 1998), property owners brought a RCRA action against former operators of a gasoline station on the property to recover for the operators' contamination of property. The last operator, Tri Star, took possession of the property in 1985 and finally quit the property removing underground storage tanks in 1992. The *Aurora* court held that the continued presence of illegally dumped materials constitutes a "continuing violation" of the RCRA, which is cognizable under 42 U.S.C. § 6972(a)(1)(A).

### 3. River Watch's Third Claim for Relief Adequately Alleges Violations of RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B)

Defendants claim that River Watch's Third Claim For Relief fails because River Watch failed to allege that: Defendants are a past or present generator or transporter of solid or hazardous waste or past or present owner or operator of a solid or hazardous waste treatment, storage or disposal facility; Defendants contributed to the handling, storage, treatment, transportation, or disposal of solid or hazardous waste; the solid or hazardous waste in question may present an imminent and substantial endangerment to health or the environment; and, Defendants were or are actively involved in the acts leading to the RCRA violations. (Court Doc. #9 - UPR Memorandum, pg. 14, lns. 13-20; Court Doc. #22 - WCM Memorandum, pg. 9, lns. 17-26) Defendants' allegations are based upon a misreading of the law and of River Watch's Complaint. Defendants' arguments regarding River Watch's allegations of 42 U.S.C. § 6972(a)(1)(B) violations rest more on what River Watch needs to prove rather than what River Watch has plead.

To adequately plead a cause of action under RCRA § 7002(a)(1)(B) imminent and substantial endangerment, River Watch need only allege that Defendants contributed to the past

or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment. The RCRA authorizes "suits initiated by 'any person . . . . against any person . . . who [possesses a statutorily defined nexus to waste that] may present an imminent and substantial endangerment to health or the environment.'" *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 399 F.3d 248, 257 (3d Cir. 2005)

RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B) states:

Except as provided in subsection (b) or (c) of this section, **any person may commence a civil action on his own behalf – against any person**, including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, **who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.** (Emphasis added)

River Watch's RCRA Notice states:

2.    Imminent and Substantial Endangerment – 42 U.S.C. § 6972(a)(1)(B)

Between July 31, 2002 and July 31, 2007, Polluters [UPR and WCM] have allowed significant quantities of hazardous constituents and other pollutants to be discharged to soil and groundwater on the Site and near adjacent properties. The contaminant levels in groundwater at the Site are significantly greater than the allowable MCL and/or WQO for the constituents. All of these pollutants are known to harm both plants and animals. In their concentration at the Site, these pollutants are creating an imminent and substantial endangerment to public health and the environment. (Court Doc. #1, Ex. B, pg. 7)

River Watch's Complaint alleges:

48.    DEFENDANTS own and/or are past operators of the Site at which hazardous levels of lead and petroleum constituents have been stored in a manner which has allowed them to leach pollutants into soil and ground water beneath and adjacent to the Site.

49.   These pollutants are known to be hazardous to the environment and human health, and if released into the environment in sufficient quantity pose an imminent and substantial risk.

50.   For purposes of the RCRA, halogenated organic compounds and other volatile organic compounds, as detailed in the RCRA NOTICE at concentrations in excess of regulatory MCLs and WQOs are "hazardous wastes" within the meaning of the statute.

51.   PLAINTIFF is informed and believes, and thereon alleges, that amounts of halogenated organic compounds and other volatile organic compounds released by DEFENDANTS at the Site are in sufficient quantity to pose an imminent and substantial risk to both the environment and human health.
(Court Doc.#1, Ex B, pg. 10-11)

River Watch has unequivocally alleged violations of RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B).   At this stage of the litigation, prior to the commencement of any discovery, nothing more is required.

## IV. CONCLUSION

Defendants have filed FRCP 12(b) Motions to Dismiss River Watch's requests for relief under the CWA and RCRA. Although the Motions were filed under FRCP 12(b), Defendants have proceeded as though they had filed motions for summary judgment, arguing that River Watch has insufficient facts to support the allegations of its Complaint.   As is evidenced by the pleadings themselves, River Watch's allegations are clear, complete and concise – mirroring the language of the statues themselves.   Given the 20 years during which Defendants have been avoiding the clean-up of this Site, their confusion regarding River Watch's allegations are not credible. River Watch requests this Court deny Defendants' Motions to Dismiss in their entirety.

Dated: August 7, 2008                     Respectfully submitted,

_____
Jack Silver
Attorney for Plaintiff
NORTHERN CALIFORNIA RIVER WATCH