Jack Silver, Esquire SBN# 160575
Law Office of Jack Silver
Jerry Bernhaut, Esquire SBN# 206264
Post Office Box 5469
Santa Rosa, California 95402-5469
Telephone: (707) 528-8175
Facsimile: (707) 528-8675
lhm28843@sbcglobal.net

Attorneys for Plaintiff
NORTHERN CALIFORNIA RIVER WATCH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHERN CALIFORNIA RIVER WATCH, a non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>UNION PACIFIC RAILROAD COMPANY, WEST COAST METALS, INC., and DOES 1-10, Inclusive,<br><br>Defendants.<br>_____/ | CASE NO.  C08-01256 MMC<br><br>**DECLARATION OF JERRY BERNHAUT IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' FRCP 12(b)(6) MOTIONS TO DISMISS**<br><br>Date:        August 29, 2008<br>Time:        9:00 a.m.<br>Ctrm:        7<br>Judge:      Hon. Maxine M. Chesney |

I, Jerry Bernhaut, declare as follows:

1.  I am an attorney duly admitted to practice before all the Courts of the State of California, and an attorney of record herein for Plaintiff NORTHERN CALIFORNIA RIVER WATCH. I have personal knowledge of all matters stated herein and, if called as a witness, could and would testify competently thereto.

2.  Attached hereto as **Exhibit A** is a true and complete copy of Cleanup and Abatement Order No. R1-2006-0017 issued by the California Regional Water Quality Control Board, North Coast Region, on February 22, 2006 for Union Pacific Railroad, West Coast Welders Supply and West Coast Metals.

1    I declare under penalty of perjury under the laws of the State of California that the foregoing is

2    true and correct, and that this declaration was executed on August 8, 2008, at Santa Rosa, California.

3

4

JERRY BERNHAUT

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28    C8-01256 MMC
DECLARATION OF JERRY BERNHAUT                                                    2

# EXHIBIT A

California Regional Water Quality Control Board
North Coast Region

CLEANUP AND ABATEMENT ORDER NO. R1-2006-0017

FOR

UNION PACIFIC RAILROAD;

WEST COAST WELDERS SUPPLY;

AND

WEST COAST METALS, INC.

99 FRANCES STREET
SANTA ROSA, CALIFORNIA

Sonoma County

The California Regional Water Quality Control Board, North Coast Region, (hereinafter Regional Water Board), finds that:

1. Union Pacific Railroad currently owns property located at 99 Frances Street, Santa Rosa, California (APN 37-012-11), hereinafter the "Site". Union Pacific Railroad is the successor in interest to Southern Pacific Transportation Company. Southern Pacific Transportation Company was formerly known as Northwestern Pacific Railroad Company.

2. In 1967, the Northwestern Pacific Railroad Company leased the Site to the West Coast Welders Supply. West Coast Welders Supply operated the site as a scrap metal facility. Site improvements included a 60-foot truck scale, a disassembly building, and material storage areas. Operations at the site included disassembly of automobiles, steam cleaning of trucks and automobile parts, and storage of metals, batteries and transformers, and miscellaneous refuse. These operations were mostly located on the northern portion of the Site as shown by aerial photographs from the City of Santa Rosa Department of Public Works for the period 1970 through 1977. West Coast Welders Supply operated the site as a scrap metal facility until June of 1979, at which time the lease was terminated.

3. In June, 1979 the Southern Pacific Transportation Company leased the Site to West Coast Metals, Inc. West Coast Metals Inc. used the site for metal salvage/recycling operations, which included purchase of metal waste material from industrial businesses, and sorting, condensing, and resale of the metal scrap. A hydraulic press was used at the Site to flatten automobiles. Aerial photographs of the Site, taken during the time West Coast Metals, Inc. leased the Site, show

C&A Order R1-2006-0017                    -2-

the former disassembly building, the tractor trailer beds for storage of metals,
large cylindrical storage containers, and numerous stockpiles of miscellaneous
parts, tanks, cars and other debris scattered over the entire Site. In 1986, the lease
was terminated and West Coast Metals Inc. abandoned its operation of the site.

4.  The Regional Water Board issued Cleanup and Abatement Order No. 88-101 on
    July 11, 1988 to the Southern Pacific Railroad, West Coast Welders Supply, and
    West Coast Metals, Inc. Cleanup and Abatement Order No. 92-87 was issued to
    these parties on June 17, 1992 replacing Order No. 88-101. Cleanup and
    Abatement Order No. 94-43 was issued to these parties on February 10, 1993
    replacing Order 92-87.

5.  Based on information contained in the record assembled by the Regional Water
    Board including evidence of past discharges at the Site, and current ownership
    and control; Union Pacific Railroad Company, West Coast Welders Supply, and
    West Coast Metals, Inc., are collectively referred to as the Dischargers.

6.  The Site is located adjacent to property at 1143 Briggs Avenue. The property at
    1143 Briggs Avenue is subject to separate enforcement orders of the Regional
    Water Board. Specifically, Cleanup and Abatement Order No. 92-17 was issued
    for the property on January 17, 1992 to Richard L. Bradley, West Coast Scrap
    Producers, Donald S. Kesler and Ethel J. Kesler, Irving Kesler and William
    Whitman, and West Coast Metals, Inc. The contamination originating on the
    1143 Briggs Avenue site appears to be co-mingled with the contamination
    originating on the 99 Frances Street site. Responsible parties for both sites should
    coordinate the necessary investigation and cleanup.

7.  A total of thirty-nine monitoring wells, fourteen groundwater extraction wells,
    and eleven piezometers have been installed on and off-site. Thirty-seven of the
    thirty-nine wells remain in place. Groundwater monitoring activities have been
    conducted under Revised Monitoring and Reporting Order No. 94-43, issued on
    July 3, 2001. Results of on-going monitoring and site investigation confirmed the
    presence of halogenated organic compounds in groundwater extending
    approximately one-half mile to the west of the site. Chemicals found in
    groundwater in the area investigated include trichloroethylene (TCE) at up to
    23,000 parts per billion (ppb), 1,1,1-trichloroethane at up to 5,800 ppb, freon 113
    at up to 19,000 ppb, benzene at up to 18 ppb and other related volatile organic
    compounds (VOCs). Other compounds previously detected in groundwater
    include heavy metals and fuel constituents.

8.  During 1991 and 2002, extensive domestic well sampling was conducted
    primarily in the area west of the Site. In 1991 laboratory results revealed
    contamination in groundwater in 33 residential wells of VOCs, such as TCE at up
    to 150 ppb. In 2002 laboratory results revealed contamination in groundwater in
    domestic wells of VOCs, such as TCE at up to 36 ppb. The site is located within
    1000 feet of a large City of Santa Rosa municipal well, which was found to be

C&A Order R1-2006-0017                    -3-

contaminated with TCE, 1,1,1-trichloroethane, freon 113, and 1,1-dichloroethene. This well is no longer in use.

9.  As an interim remedial measure, on February 7, 1994, the Dischargers began operating an on-site groundwater extraction and treatment system.  On November 2, 1994 the Dischargers added an off-site extraction and treatment system. Together, the treatment system includes nine on-site extraction wells and four off-site extraction wells.  The interim remedial system involves extraction and treatment of contaminated groundwater from the upper three water-bearing zones. Groundwater is treated in an air stripper to remove VOCs.  Further remedial actions are necessary for effective cleanup of all impacted aquifers.

10. The April 15, 2002 *Draft Pilot Study Work Plan* and March 24, 2005 *Addendum to Pilot Study Workplan* were submitted by the Dischargers to the Regional Water Board.  The work plan and work plan addendum propose the scope of work and schedule for conducting an in-situ bioremediation pilot study for remediation of chlorinated VOCs at the Site.  Data generated during the pilot study will be evaluated to determine an appropriate final remedial action to achieve water quality objectives within a reasonable time frame.

11. The Dischargers have caused or permitted, cause or permit, or threaten to cause or permit waste to be discharged or deposited where it is, or probably will be, discharged into the waters of the state and creates, or threatens to create, a condition of pollution or nuisance.  Continuing discharges are in violation of the Porter-Cologne Water Quality Control Act and provisions of the Water Quality Control Plan for the North Coast Region (Basin Plan).

12. Beneficial uses of areal groundwater include domestic, irrigation, and industrial supply.  Beneficial uses of Santa Rosa Creek, a tributary to the Laguna de Santa Rosa and the Russian River are:

    a.  municipal and domestic supply
    b.  agricultural supply
    c.  industrial process supply
    d.  groundwater recharge
    e.  navigation
    f.  hydropower generation
    g.  water contact recreation
    h.  non-contact water recreation
    i.  commercial and sport fishing
    j.  warm freshwater habitat
    k.  cold freshwater habitat
    l.  wildlife habitat
    m.  migration of aquatic organisms
    n.  spawning, reproduction, and/or early development.

13. The California Water Code, and regulations and policies developed there under, require cleanup and abatement of discharges and threatened discharges of waste to the extent feasible.  Cleanup and abatement activities are to provide attainment of background levels of water quality, or the highest water quality that is reasonable if background levels of water quality cannot be restored.  Alternative

C&A Order R1-2006-0017          -4-

cleanup levels greater than background concentration shall be permitted only if the discharger demonstrates that: it is not feasible to attain background levels; the alternative cleanup levels are consistent with the maximum benefit to the people of the State; alternative cleanup levels will not unreasonably affect present and anticipated beneficial uses of such water; and they will not result in water quality less than prescribed in the Basin Plan and Policies adopted by the State and Regional Water Board.

14. Water quality objectives in the Basin Plan are adopted to ensure protection of the beneficial uses of water. The most stringent water quality objectives for protection of all beneficial uses are selected as the protective water quality criteria. Alternative cleanup and abatement actions must evaluate the feasibility of, at a minimum: (1) cleanup to background levels, (2) cleanup to levels attainable through application of best practicable technology, and (3) cleanup to protective water quality criteria levels. Narrative water quality objectives are interpreted through application of available scientific information and numerical limits are thence derived from such information. Exhibit 1, attached and made part of this Order, sets out the water quality objectives for ground and surface water.

15. Discharge prohibitions contained in the Basin Plan apply to this site. State Water Resources Control Board Resolution 68-16 (*Statement of Policy With Respect To Maintaining High Quality of Waters in California*) applies to this site. State Water Resources Control Board Resolution 92-49 applies to this site and sets out the *Policies and Procedures for Investigation and Cleanup and Abatement of Discharges under Section 13304 of the California Water Code.*

16. Pursuant to California Water Code Section 13304, the Dischargers are hereby notified that the Regional Water Board is entitled to, and may seek reimbursement for, all reasonable costs actually incurred by the Regional Water Board to investigate unauthorized discharges of waste and to oversee cleanup of such waste, abatement of the effects thereof, or other remedial action, required by this Cleanup and Abatement Order.

17. The Regional Water Board will ensure adequate public participation at key steps in the remedial action process, and shall ensure that concurrence with a remedy for cleanup and abatement of the discharges at the site shall comply with the California Environmental Quality Act (Public Resources Code Section 21000 et seq.) ("CEQA").

18. The issuance of this Cleanup and Abatement Order is an enforcement action being taken for the protection of the environment and, therefore, is exempt from the provisions of CEQA in accordance with Sections 15308 and 15321, Chapter 3, Title 14 of the California Code of Regulations.

19. Any person affected by this action of the Board may petition the State Water Resources Control Board (State Water Board) to review the action in accordance with Section 13320 of the California Water Code and Title 23, California Code of Regulations, Section 2050. The petition must be received by the State Water Board within 30 days of the date of this Order. Copies of the law and regulations applicable to filing petitions will be provided upon request. In addition to filing a petition with the State Water Board, any person affected by this Order may request the Regional Water Board to reconsider this Order. To be timely, such request must be made within 30 days of the date of this Order. Note that even if

C&A Order R1-2006-0017                    -5-

reconsideration by the Regional Water Board is sought, filing a petition with the State Water Board within the 30-day period is necessary to preserve the petitioner's legal rights. If the Dischargers choose to appeal the Order, the Dischargers are advised that they must comply with the Order while the appeal is being considered.

20. This Order in no way limits the authority of the Regional Water Board to institute additional enforcement actions or to require additional investigation and cleanup at the facility consistent with the California Water Code. This Order may be revised by the Regional Water Board Executive Officer as additional information becomes available.

THEREFORE, IT IS HEREBY ORDERED that CAO Order No. 94-43 is rescinded and, pursuant to California Water Code Sections 13267(b) and 13304, the Dischargers shall cleanup and abate the discharge and threatened discharges forthwith and shall comply with the following provisions of this Order:

1. All work performed under this Order shall be conducted in accordance with all local ordinances and under the direction of a California Registered Geologist or Registered Civil Engineer experienced in pollution investigation and cleanups. All necessary permits shall be obtained.

2. Comply forthwith with Monitoring and Reporting Program Order No. 94-43 and subsequent revisions thereof.

3. Implement the April 15, 2002 Pilot Study Workplan and subsequent March 24, 2005 Workplan Addendum within 30 days of the date of this Order. As stated in the pilot study workplan, the groundwater extraction system will not be operated during the duration of the pilot study. The pilot study is scheduled to be completed within nine months of the start of the study.

4. Within 60 days of completing the pilot study, including all injections and required monitoring, a complete report of findings shall be submitted. The report shall include a summary of all field activities including: drilling activities, injection events, and analytical data collected. The report shall also include a full evaluation of the data and information collected during the study, including measured field and monitoring parameters and contaminant concentration trends as they relate to the effectiveness of VOCs concentration reduction. The report shall also include any observed complications and unfavorable conditions encountered. The report shall provide conclusions on the overall effectiveness of the study.

5. Within 90 days upon the Executive Officer's comments on the pilot study report, a *Feasibility Study* and *draft Remedial Action Plan* (FS/draftRAP) evaluating all appropriate cleanup and abatement alternatives for the site, summarizing each of the remedial alternatives considered and describing the preferred remedies to address final cleanup shall be submitted.

6. Within 30 days after all comments are received from interested parties, the public, and other agencies, the final *Remedial Action Plan* (RAP) including a workplan describing remedial action implementation, shall be submitted. The RAP and workplan shall include a schedule for implementation.

C&A Order R1-2006-0017              -6-

7. The Discharger shall be responsible, pursuant to California Water Code (CWC) Section 13304, to the Regional Water Board for all reasonable costs actually incurred by the Regional Water Board to investigate unauthorized discharges of waste and to oversee cleanup of such waste, abatement of the effects thereof, or other remedial action, required by this Order. If the Site addressed by this Order is enrolled in a State Water Board-managed reimbursement program, reimbursement shall be made pursuant to this Order and according to the procedures established in that program. Any disputes raised by the discharger over reimbursement amounts or methods used in that program shall be consistent with the dispute resolution procedures for that program. Otherwise, the failure to timely remit payment according to invoicing instructions shall be considered a violation of this Order.

8. If, for any reason, the Discharger is unable to perform any activity or submit any documentation in compliance with the schedule set forth herein or in compliance with any work schedule submitted in compliance with this Order and concurred in or revised by the Executive Officer, the Discharger may request, in writing, an extension of the time specified. The extension request must be submitted five days in advance of the due date and shall include justification for the delay including a description of the good faith effort performed to achieve compliance with the due date. The extension request shall also include a proposed time schedule with a new performance date for the due date in question and all subsequent dates dependent on the extension. A written extension may be granted for good cause, in which case this Order may be revised.

9. This Order in no way limits the authority of this Regional Water Board to institute additional enforcement actions or to require additional investigation and cleanup at the facility consistent with CWC. This Order may be revised by the Executive Officer as additional information becomes available.

10. Failure to comply with the terms of this Order may result in enforcement under the CWC. Any person failing to provide technical reports containing information required by this Order by the required date(s) or falsifying any information in the technical reports is, pursuant to CWC Section 13268, guilty of a misdemeanor and may be subject to administrative civil liabilities of up to one thousand dollars ($1,000.00) for each day in which the violation occurs. Any person failing to cleanup or abate threatened or actual discharges as required by this Order is, pursuant to CWC Section 13350(e), subject to administrative civil liabilities of up to five thousand dollars ($5,000.00) per day or ten dollars ($10) per gallon of waste discharged.

Ordered by_____

           Catherine E. Kuhlman
           Executive Officer

           February 22, 2006