Cameron S. Kirk, Esq. (SB# 108013)
Karin P. Beam, Esq. (SB# 112331)
SPAULDING McCULLOUGH & TANSIL LLP
90 South E Street, Suite 200
P.O. Box 1867
Santa Rosa, CA  95402
Telephone:     (707) 524-1900
Facsimile:      (707) 524-1906
kirk@smlaw.com; beam@smlaw.com

Attorneys for Defendant
WEST COAST METALS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHERN CALIFORNIA RIVER WATCH, a Non-Profit Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>UNION PACIFIC RAILROAD COMPANY, WEST COAST METALS, INC., and DOES 1-10, inclusive,<br><br>Defendants. | Case No.:  3:08-cv-01256-MMC<br><br>DEFENDANT WEST COAST METALS, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S FRCP 12(b)(6) MOTION TO DISMISS<br><br>Date:   August 29, 2008<br>Time:  9:00 a.m.<br>Courtroom:     7<br>Judge: Hon. Maxine M. Chesney |

I. THE 12(b)(6) PREMISE IS SOUND.

In its Opposition, Plaintiff expresses concern that the pending Motion to Dismiss is premised in part on factual analysis, and as such is not appropriate for an FRCP 12(b)(6) Motion.  However, material submitted with the Complaint, including exhibits, may be considered as part of the Complaint for purposes of a Rule 12(b)(6) Motion.  (*Brown v. Rumsfeld* (2002) N.D.Cal. 211 FRD 601, 604; *Amafac Mortgage Corp. v. Arizona Mall of Tempe, Inc.*, 583 F.2nd 426, 429-430 (9th Cir. 1978))  River Watch's own documents, the Complaint and exhibits thereto, provide the support for West Coast's position in the pending Motion.  The Motion is based on Plaintiff's own assertions, and as such, is wholly appropriate.  On its face, the Complaint must be dismissed.

## II. THE FIRST CLAIM AGAINST WEST COAST IS DISMISSED.

The Court Docket will reflect that Northern California River Watch ("River Watch") has voluntarily dismissed its First Claim for Relief against West Coast Metals, Inc. ("West Coast") herein. That pleading was filed on August 1, 2008, and although River Watch's Opposition to the within Motion contains argument going to that First Claim, West Coast will not address that analysis other than to describe the implications of the Dismissal as to the remaining Claims, below.

## III. THE SECOND CLAIM AGAINST WEST COAST IS PROHIBITED.

River Watch's Complaint, at page 10, paragraphs 43 and 44, provides the essence of the alleged RCRA violation contained in the Second Claim for Relief. River Watch contends that West Coast stored and disposed of materials containing toxic levels of organic compounds at the Site. Without imposition of penalties, "it will continue to violate the law". The regulatory statute upon which the Claim is based is 42 U.S.C. §6972(a)(1)(A), a regulation that allows for court intervention when there is a <u>current violation of the law</u>. (42 U.S.C. §6972(a)(1)(A).)

River Watch acknowledges that West Coast abandoned its operation on the Site in 1986, over 20 years ago. River Watch also acknowledges that the site has been in remediation with governmental agencies for years. Nonetheless, River Watch contends that West Coast's "storage and disposal has caused" the discharge of hazardous waste. But neither the Notice of Violations nor the Complaint describes any "current" storage, disposal, or discharge of hazardous waste. The Notice does not allege that any of West Coast's "former" (River Watch's own term) disassembly building, tractor trailer beds, storage containers or stock piles of parts are presently at the Site. In fact, the Notice clarifies that the facility and equipment are no longer there.

Given that the property is currently in environmental remediation under the auspices of CAO R1-2006-0048 and general MPDES permit number CAG91101, River Watch does not, and cannot say that there is any ongoing storage of scrap metal, automobile parts or industrial metal waste on the land. River Watch does not allege that, despite extensive remediation efforts, West Coast's "former" building and metal storage are currently and continually causing environmental damage. They cannot be.

1    In order to avoid the fact that the Complaint is premised on alleged past RCRA violations, River Watch cites to *Gache v. Harrison*, 813 F.Supp. 1037, 1041 (S.D.N.Y. 1993).  There, the Court based its analysis on the "continued presence of illegally dumped materials on Plaintiff's property".  The Court reasoned that "…<u>so long as the waste remained in the landfill "threatening to leach"</u>, a continuing violation "surely may exist".  The basis for the *Gache* holding, then, <u>was the presence on the site of materials which may continue to contaminate</u>.  No allegations exist either in the Notice of Violations or the Complaint describing this condition on the property at bench.  The materials which were on the site and may have caused contamination are long gone.

   Moreover, the statutory schemes at issue in this litigation, the CWA and the RCRA, operate in tandem.  The CWA regulates ground and surface water contamination, while the RCRA regulates solid and hazardous waste disposal on land.  By dismissing the CWA claim it originally brought against West Coast, and because there has been no scrap metal operation on site in years, River Watch concedes that there is no longer any damage to the environment being caused by West Coast.  Via the Dismissal, River Watch has confirmed that there is no "discharge from a point source" by West Coast at this site, the necessary foundation for the CWA claim it has dismissed.  Logically, when there is no "discharge from a point source", there can be no resulting damage, no continuing pollution at the site.  By admitting that West Coast is not releasing contaminants into the water, River Watch must also concede that there is no RCRA violation.

   As described in Union Pacific's Motion to Dismiss as well, the claims raised by River Watch in this litigation are not timely.  The site has not been in use for years, and West Coast, a temporary lessee, has long been absent from this land.  If River Watch is concerned about the extent and effectiveness of the ongoing remediation efforts at the property, it can look to the appropriate governmental agencies for assistance in that regard, but the Claims it now seeks to press go to past conduct, admittedly without continuing damage, and as such, do not form a proper basis for the RCRA statutory allegations.  West Coast respectfully requests that this Court dismiss the second Claim brought against it.

IV. <u>RIVER WATCH'S THIRD CLAIM FOR RELIEF MUST BE DISMISSED.</u>

The Third Claim for Relief brought against West Coast sounds in alleged violations of RCRA section 7002(a)(1)(B) and 42 U.S.C §6272(a)(1)(B).  That statute requires proof of past or present operation of a solid or hazardous waste treatment, storage or disposal facility, where the hazardous waste may present an imminent and substantial endangerment to health or the environment.  The pleadings brought by River Watch must reflect these requirements. By River Watch's own admission, the claims are subject to a statue of limitations that must include only the years July 2002 to July 2007.  (Notice of Violations at page 5, paragraph 5.)

As with the previous analysis herein, the Notice of Violations must form the backbone of this lawsuit.  In the Notice, Exhibit B to the Complaint at page 5, under the subheading "Violations", River Watch claims that during the years July 2002 through July 2007, West Coast "caused or permitted…waste to be discharged from or deposited on the site where it is…discharged into the waters of the state…."  Again, in the Notice at page 7, under "Imminent and Substantial Endangerment", River Watch contends that West Coast has allowed hazardous materials "to be discharged to soil and groundwater" between July 31 2002 and July 31 2007.

But West Coast is no longer at the site, and River Watch does not claim that the metal scrap "facility" was still on the property between the years in question.  There was no longer any source of pollution on the site during the years in question, and the site is in remediation.  West Coast has not stored, handled, or treated hazardous material during the requisite timeframe, and cannot have, consequently, "caused waste to be discharged from the Site".

River Watch is also required to specify the activity that allegedly constitutes an RCRA violation, at page 4, paragraph 2 of its Notice.  Here, River Watch alleges the "major activity" giving rise to the Notice as a discharging of pollutants from Polluters site "to surface waters".  But the dismissal of the claims arising from the Clean Water Act is dispositive.  Even if River Watch can ignore the fact that West Coast has not been on site since 1986, that cleanup operations regulated by governmental agencies have been ongoing, and that it has nowhere plead a continuing presence of alleged contaminating metal scrap at the property, the fact that it dismissed the claim against West Coast originally premised on a discharge to a water supply compels dismissal of the RCRA violations

as well. Based on the internal inconsistencies and impossibilities of the River Watch allegations, West Coast respectfully requests that the Third Claim brought against it be dismissed.

## V. CONCLUSION.

A careful reading of the Complaint at bench and its underlying Notice of Violations leads to the necessary conclusion that River Watch is seeking to enjoin conduct that does not exist. Its Prayer for Relief herein ignores the facts of the matter, that West Coast long ago discontinued operations at the site, and cannot be accused of discharging contaminants into soil or water from the Site. West Coast appreciates the Court's consideration herein.

DATED: August 15, 2008          Respectfully submitted,

                                                SPAULDING McCULLOUGH & TANSIL LLP
Attorneys for Defendant
WEST COAST METALS, INC.


By:     /s/ Karin P. Beam
       Karin P. Beam